[No. 64953-1-I.   Division One.   August 16, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD DEWEY EDVALDS, *Appellant*.

518

*Lise Ellner*, appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Jesse Williams, Deputy*, for respondent.

¶1 APPELWICK, J. — Edvalds appeals his convictions for two counts of second degree burglary, one count of second degree theft, and one count of unlawful possession of a

controlled substance. Edvalds alleges numerous instances of prosecutorial misconduct. He contends that he received ineffective assistance of counsel when counsel failed to request a mistrial after the prosecutorial misconduct occurred. He also argues that he was denied due process by lack of notice that the State intended to recommend an exceptional sentence when his high offender score would have resulted in unpunished crimes. We affirm.

## FACTS

¶2 On August 29, 2007, members of the Tacoma Presbyterian Church discovered several missing items. Security video of the parking lot and the church interior showed a person cutting the lock off the fence surrounding the parking lot and driving a two-tone Ford Ranger with a camper shell into the parking lot.[1] The person wore camouflage pants, white tennis shoes with dark-colored tongues, gloves, and black wraparound sunglasses. Law enforcement circulated still frame photos from the security footage. Lakewood Police Officer Adam Leonard identified the person as defendant Richard Edvalds. Officer Leonard had seen Edvalds driving a similar truck during previous surveillance.

¶3 After his arrest, officers searched Edvalds's place of employment, R&R Recycling, as well as his two vehicles that were located there, a Ford Ranger and a station wagon. Inside the Ford Ranger were bolt cutters, black wraparound sunglasses, a baggie of methamphetamine, and a scale. Inside the station wagon were camouflage pants, white tennis shoes with blue tongues, three sets of gloves, and a set of shaved keys of the type used to break into and steal vehicles.

¶4 The State charged Edvalds with two counts of second degree burglary, one count of second degree theft, and one

---

[1] The video is not in the record on appeal. Edvalds does not dispute these facts on appeal.

count of unlawful possession of a controlled substance (methamphetamine). The jury found him guilty.

¶5 Edvalds appeals.

## DISCUSSION

I. Prosecutorial Misconduct

¶6 Edvalds first contends the prosecutor committed misconduct by failing to adhere to the trial court's pretrial ruling on the admissibility of evidence, by improperly commenting on the credibility of a witness, and by making other allegedly inappropriate comments.

■■ ¶7 A defendant claiming prosecutorial misconduct who has preserved the issue by objection bears the burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). A defendant establishes prejudice if there is a substantial likelihood the misconduct affected the jury's verdict. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). Failure to object to a prosecutor's improper remark constitutes waiver unless the remark is deemed to be so flagrant and ill intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

■ ■ ¶8 We review trial court rulings on alleged prosecutorial misconduct for abuse of discretion. *State v. Finch*, 137 Wn.2d 792, 839, 975 P.2d 967 (1999). A court must consider the comments in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

A. Comments Regarding Credibility

¶9 Edvalds alleges that the prosecutor improperly commented on Edvalds's credibility. Edvalds raises several instances that occurred at trial as alleged misconduct.

¶10  First, on cross-examination, the State began by asking the defendant, "You would agree, sir, that the jury here has to decide whether you're credible?" The court sustained the defense objection. The State then asked, "Sir, you would agree that the jury has to decide whether your testimony here today is truthful?" After a sidebar, the court explained that the objection was sustained and the question withdrawn. The State then initiated the following conversation:[2]

Q Sir, yesterday you were asked . . . "Have you ever been to a court of law before?" Do you remember that question?

A Yes.

Q Again, please answer yes or no. You responded that you had been in a court of law in 1998 for a forgery case and also, I believe, you said seven or eight years ago for a false statement case. Is that what you testified to yesterday?

A Yes.

Q Mr. Edvalds, that wasn't accurate, was it; yes or no?

A No.

Q Truth, Mr. Edvalds, you have been in a court of law a number of times in the last ten years; isn't that correct?

A Yes.

Q In truth, you were in a court of law in 1998 when you were convicted for a felony charge of unlawful possession of a controlled substance?

A Yes.

Q In truth, you were in a court of law in 2001 when you were convicted for a felony charge of unlawful possession of a controlled substance?

A True.

The State continued questioning Edvalds in a similar manner regarding his remaining convictions, often prefac-

---

[2] During direct examination, Edvalds opened the door to testimony regarding his criminal history by responding to the questions regarding whether he had dealt with a court of law in the past by answering, "I had a forgery about 11 years ago or so, and then I had a theft."

ing the question with the phrase, "In truth, Mr. Edvalds." The defense did not object.

¶11 Edvalds testified that the camouflage pants, alleged by police to have been located in his car, were actually found in a building at his work and that he had never worn them. The prosecutor responded, "And, again, Mr. Edvalds, you expect the jury to believe that . . . ." The court overruled the defense's objection. The prosecutor then restated, "You expect the jury to believe that just like you expect the jury to believe that you were trying to be up front with the investigator?" The court sustained the defense's objection on the basis that it was a compound question. The prosecutor rephrased, asking, "You expect the jury to believe that you're being up front with them with that testimony; is that right?" After Edvalds answered, the prosecutor followed up with, "Just like you were being up front with Investigator [Richard] B[a]rnard?" Defense did not object.

¶12 The prosecutor also asked if Edvalds had been driving a car when he had previously been arrested. The court sustained the defense's objection.

¶13 The prosecutor additionally asked Edvalds during cross-examination, "[Y]ou would agree that if someone had relevant and helpful testimony, you would do your best to get that information to law enforcement?" The court sustained the defense's objection to the argumentative nature of the question and the prosecutor withdrew the question.

¶14 Finally, the prosecutor asked Edvalds to agree that the property stolen exceeded $250 in value. The trial court sustained the defense objection on the grounds that the question was beyond the base of the defendant's knowledge.

¶15 Edvalds here argues that the above statements by the prosecutor constitute prosecutorial misconduct. He supports this assertion only by analogizing to *State v. Stith*, 71 Wn. App. 14, 856 P.2d 415 (1993). In *Stith*, the appellant was convicted of being a drug dealer. *Id.* at 15. On appeal, Stith alleged three instances of prosecutorial misconduct. *Id.* at 16-18. First, the prosecutor suggested that the jury

would have to conclude that the police were lying if they wanted to believe the defendant. *Id.* at 16-17. Second, the prosecutor said the defendant "was just coming back and he was dealing again." *Id.* at 16. Third, the prosecutor implied that the defendant's guilt had already been determined when a judge entered a finding of probable cause and that incredible safeguards existed to prevent police officer perjury. *Id.* at 17. The court determined that although the argument about lying was not incurably prejudicial, the other remarks were egregiously prejudicial. *Id.* at 21, 23.

██ ¶16 Edvalds fails to meet his burden to prove that the comments here were improper or that prejudice resulted. A prosecutor does not commit misconduct anytime he mentions credibility. *Id.* at 21. It is improper for a prosecutor to make comments that express a personal opinion of witness veracity. *Id.* at 19. But, a prosecutor may comment on a witness's veracity as long as a personal opinion is not expressed and as long as the comments are not intended to incite the passion of the jury. *Id.* at 21. Because the prosecutor did not offer a personal opinion or incite the passion of the jury, the comments here do not rise to the level of the reversible comments made by the prosecutor in *Stith*.

██ ¶17 The trial court sustained objections to several of the comments. Defense counsel never requested a limiting instruction after an objection was sustained. The court instructed the jury to disregard any questioning or evidence that the court ruled inadmissible. Juries are presumed to follow the court's instructions. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008), *cert. denied*, 129 S. Ct. 2007 (2009). Edvalds has not established that any prejudice resulted.

██ ██ ¶18 Edvalds did not object to several of the instances of alleged misconduct, specifically the comments "[i]n truth, Mr. Edvalds" and "[y]ou expect the jury to believe that you're being up front with them." The absence of an objection by defense counsel strongly suggests to a court that the argument or event in question did not appear

critically prejudicial to an appellant in the context of the trial. *State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990). Edvalds fails to allege that these comments were flagrant and ill intentioned as required by *Belgarde*, 110 Wn.2d at 507. There is no reason that any prejudice from these comments could not have been ameliorated by a curative instruction.

¶19 Edvalds asserts that the prosecutor inappropriately inserted his personal opinion into the questions when he implied that Edvalds should have tried harder to get exculpatory information to the police. The objection to the question was sustained and the question withdrawn.

¶20 We hold that Edvalds failed to meet his burden to show the impropriety of the prosecutor's comments. Additionally, he failed to show that the misconduct, if any, regarding credibility of the witness and the personal opinion of the prosecutor, was prejudicial.

### B. Testimony Regarding Surveillance

¶21 Edvalds argues that the prosecutor committed misconduct by intentionally disregarding the court's order in limine. The trial court ordered that officers could testify that they had previously observed Edvalds but that the parties should not use the term "surveillance." Edvalds asserts that during cross-examination of the police witnesses, the prosecutor repeatedly asked the police about surveillance in violation of the trial court order.

¶22 When the prosecutor questioned Officer Leonard, the following conversations arose:

Q. Prior to the burglary, did your duties require you to observe the defendant while maintaining a low profile?

A. Yes.

The court overruled the defense's objection. The prosecutor continued:

Q. . . . Roughly, when did you begin observing the defendant prior to the burglary?

A. January 1st of 2006 to, roughly, July of 2007.

Q. Can you tell the jury where you observed the defendant?

A. I observed him in several locations, one being R&R Recycling, 13415 Pacific Avenue.

The officer went on to explain that due to those observations he was familiar with the vehicles driven by the defendant, including a two tone truck with a camper shell. Defense did not object. Also, Officer Leonard explained to the prosecutor that he recognized Edvalds and his truck when he saw the still frames from the security video circulated by the police department. He explained:

I told Officer [Austin] Lee, "This is Richard Edvalds. He's known to me. This is a truck that is known to me to be at R&R Recycling." He didn't know anything about the subject. I told him where R&R was and what the situation was, and I had an internal document complete with booking photos of . . . .

Defense objected. The trial court sustained the objection. No curative instruction was requested or given.

¶23 Also, while the prosecutor questioned Roger Pederson, Edvalds's employer and former father-in-law, the following conversation occurred:

Q. Okay. Mr. Pederson, you're aware . . . that R&R Recycling was, for some time, surveiled by law enforcement; correct?

A. That's a fact.

Q. How do you know that?

Defense objected. During sidebar, however, defense counsel agreed that the witness could appropriately testify to his knowledge of the surveillance. He clarified that he objected only to any additional testimony regarding the surveillance. The trial court recommended, and the defense agreed, that the objection would be sustained and the prosecutor could rephrase, allowing the witness to state that he was aware that the business was under surveillance and nothing more.

¶24 Returning to questioning, the prosecutor asked, "Mr. Pederson, just to be sure, through your time at R&R

Recycling, you were aware that law enforcement was surveiling the store?" Defense counsel objected to the terminology and the court sustained the objection. The prosecutor then asked, "[Y]ou were aware that law enforcement was observing your store while trying to maintain a low profile; correct?" Defense counsel did not object.

¶25 Edvalds alleges that the above commentary constitutes repeated violation of the trial court's pretrial order.

¶26 Edvalds claims that this case is analogous to *State v. Jones*, 144 Wn. App. 284, 294-95, 183 P.3d 307 (2008). In *Jones*, the prosecutor encouraged the jury to believe the confidential informant, who did not testify, because he had frequently worked with the police and was reliable. *Id.* at 292-93. Also, defense counsel asked the police officer whether the informant had " 'dropped out of sight.' " *Id.* at 294. The prosecutor then on redirect improperly drew the inference that the informant did not testify because he was frightened of the defendant. *Id.* at 294-95. The court held that the prosecutor improperly seized the opportunity to admit otherwise inadmissible and inflammatory hearsay evidence. *Id.* at 295. Here, no such bolstering of the witness is alleged. Also, the prosecutor here merely attempted to walk a difficult line in order to have Officer Leonard identify Edvalds and the truck while complying with the court order. The prosecutor's actions here are distinguishable from those of the prosecutor in *Jones*.

¶27 Edvalds also cites to *Belgarde*, 110 Wn.2d at 507-08. In *Belgarde*, the prosecutor made improper comparisons, calling the American Indian Movement " 'a deadly group of madmen' " and " 'butchers that killed indiscriminately.' " *Id.* at 506-07 (emphasis omitted). The court found that these comments were "flagrant" and a "deliberate appeal to the jury's passion and prejudice." *Id.* at 508, 507. The remarks in this case do not rise to the level of *Belgarde*.

¶28 In *Stith*, the court found that remarks that the defendant was " 'just resuming his criminal ways' " and that " 'he was dealing again' " constituted reversible misconduct when made in spite of a direct court order to exclude any

evidence of prior drug convictions. 71 Wn. App. at 16, 22-23. But, this was one of multiple instances of prosecutor misconduct that occurred in *Stith*. *Id.* at 22. In this case, defense counsel agreed that the question to Pederson was appropriate. Only using the word "surveillance" violated the court's prior ruling. The prosecutor did not delve deeper into the issue of the surveillance. Even if the prosecutor's mention of surveillance at R&R Recycling constituted misconduct, it did not alone warrant a new trial.

¶29 Finally, in *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009), the trial court excluded ER 404(b) propensity evidence unless the defense raised a certain argument. The prosecutor blatantly referred to excluded evidence both in the opening statement and during direct examination, generating a theme used throughout trial. *Id.* at 747-49. The court held that such preemptive presentation of the excluded evidence and subsequent emphasis on the evidence during closing argument had a substantial likelihood of affecting the jury. *Id.* at 749. *Fisher* is factually distinguishable from the actions by the prosecutor here, where the use of the word "surveillance" was infrequent, inadvertent, and not relied on in subsequent argument.

¶30 We hold that Edvalds failed to prove that the uses of the word "surveillance" by the prosecutor constituted misconduct. Because Edvalds has failed to establish the errors he relies upon for his cumulative error and ineffective assistance of counsel arguments, they also fail and need not be addressed further.

## II. Notice of Exceptional Sentence

¶31 Edvalds next claims that the State failed to provide notice that it intended to seek an exceptional sentence, and that the exceptional portion of his sentence must be reversed.

¶32 Prior to sentencing on these charges, the State charged Edvalds in a separate case with a number of felony trafficking counts relating to his employment at R&R Recycling. The day of the sentencing hearing on this case,

Edvalds pleaded guilty to the trafficking charges in exchange for an agreement that the trafficking sentence would run concurrently with the sentence in this case. The parties immediately proceeded to sentencing in this case. At sentencing, the State recommended that the court impose an exceptional sentence based on RCW 9.94A.535(2)(c), the free crimes provision of the Sentencing Reform Act of 1981, chapter 9.94A RCW. Edvalds objected, alleging that the State had failed to provide notice, but did not request a continuance. The State responded that it was impossible to give notice earlier because Edvalds had just pleaded guilty in the trafficking case. The court decided to run the sentences consecutively.

¶33 We first determine whether a defendant receiving an exceptional sentence under RCW 9.94A.535(2)(c) is entitled to notice under RCW 9.94A.537(1). RCW 9.94A.535 instructs:

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. Facts supporting aggravated sentences, other than the fact of a prior conviction, shall be determined pursuant to the provisions of RCW 9.94A.537.

RCW 9.94A.537(1) requires:

> At any time prior to trial or entry of the guilty plea if substantial rights of the defendant are not prejudiced, the state may give notice that it is seeking a sentence above the standard sentencing range. The notice shall state aggravating circumstances upon which the requested sentence will be based.

The State here sought an exceptional sentence based on Edvalds's prior convictions under RCW 9.94A.535(2)(c). That provision permits a trial court to impose an exceptional sentence when the "defendant has committed multiple current offenses and the defendant's high offender

score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c).[3]

¶34 We review issues of statutory interpretation de novo. *State v. Alvarado*, 164 Wn.2d 556, 561, 192 P.3d 345 (2008). Our purpose when interpreting a statute is to determine and enforce the intent of the legislature. *Id.* at 561-62. Where the meaning of statutory language is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. *Id.* at 562. In discerning the plain meaning of a provision, we consider the entire statute in which the provision is found, as well as related statutes or other provisions in the same act that disclose legislative intent. *Id.*

¶35 The plain language of RCW 9.94A.537 does not limit its procedural requirements to aggravating factors found by a jury. But, the meaning of the provision must be considered in the context of the statutory scheme as a whole, including related provisions. *Alvarado*, 164 Wn.2d at 562. RCW 9.94A.535 specifically excludes prior convictions from the procedural requirements of RCW 9.94A.537. Considering the statutory scheme as a whole, notice is not required by the statutory provisions when the State alleges aggravating factors based on prior criminal history.

¶36 Nonetheless, Edvalds claims *State v. Womac*, 160 Wn.2d 643, 160 P.3d 40 (2007), requires notice. There, the

---

[3] The Washington State Legislature amended RCW 9.94A.535 and adopted RCW 9.94A.537 in response to the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *State v. Powell*, 167 Wn.2d 672, 678, 223 P.3d 493 (2009) (plurality opinion); *State v. Hughes*, 166 Wn.2d 675, 687, 212 P.3d 558 (2009). In *Apprendi*, the Supreme Court held that other than the fact of a prior conviction, the Sixth Amendment requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490. Then in *Blakely*, the Supreme Court held that the statutory maximum under *Apprendi* is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted). Both *Apprendi* and *Blakely* provided an exception for sentencing factors based on criminal history. *Apprendi*, 530 U.S. at 490; *Blakely*, 542 U.S. at 301. Our legislature then amended Washington's Sentencing Reform Act of 1981, chapter 9.94A RCW, to provide a procedure for juries to find facts to support exceptional sentences.

Washington Supreme Court held that RCW 9.94A.537(1) permits the imposition of an exceptional sentence under RCW 9.94A.535(3) only when the State has given notice, prior to trial, that it intends to seek a sentence above the standard sentencing range. *Womac*, 160 Wn.2d at 663. Notice is clearly required as to factors that go to the jury, consistent with the statute. RCW 9.94A.537(1). But, that case did not address an exceptional sentence based solely on the defendant's criminal history.

¶37 Edvalds argues that *State v. Bobenhouse*, 143 Wn. App. 315, 177 P.3d 209 (2008), *aff'd on other grounds*, 166 Wn.2d 881, 214 P.3d 907 (2009), decided this issue and requires notice in this case. We disagree. Bobenhouse alleged the State had not given him notice of its intent to seek an exceptional sentence. *Id.* at 330. The State asserted it had. *Id.* at 331. The court, without further analysis, quoted RCW 9.94A.537(1), stating that "[t]he State must give notice at any time prior to trial . . . that it is seeking a sentence above the standard range [and] must set out any aggravating factors alleged." *Bobenhouse*, 143 Wn. App. at 331. It noted no particular form was required. *Id.* The State had sent a letter notifying the defendant that it intended to seek an exceptional sentence under RCW 9.94A.535(2)(c), and defense counsel had acknowledged it. *Bobenhouse*, 143 Wn. App. at 331. The court held Bobenhouse received advanced notice. *Id.* But, the court was not asked to address specifically whether notice was mandatory under RCW 9.94A.537(1) when the aggravating factor was free crimes. *Bobenhouse*, 143 Wn. App. at 331. The only issue was whether notice had been given.[4] *Id.* at 330. *Bobenhouse* may assume, but it does not hold, that notice is required.

¶38 The recent decision in *State v. Powell*, 167 Wn.2d 672, 676, 223 P.3d 493 (2009) (plurality opinion), does not require a different result. In that case, Powell's exceptional sentence

---

[4] The holding of *Bobenhouse* is in doubt in light of *Powell*, which may indicate that going forward, notice of aggravating factors under RCW 9.94A.535(3) must be provided in the charging document. *Powell*, 167 Wn.2d at 690 (Stephens, J., concurring); *id.* at 691 (Owens, J., dissenting).

had been reversed based on *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *Powell*, 167 Wn.2d at 676. He argued that the court was not authorized on resentencing to impanel a jury for the purpose of considering whether aggravating factors existed that bore on the exceptional sentence. *Id.* His basis for the argument was that he was not given notice before trial of the State's intent to seek an exceptional sentence. *Id.* at 677. The plurality and the concurrence agreed that, in the narrow circumstance of a resentencing after *Blakely*, the State need not have alleged the aggravating factors in the information. *Id.* at 687 (plurality); *id.* at 690 (Stephens, J., concurring); *see also State v. McNeal*, 156 Wn. App. 340, 356, 231 P.3d 1266 (2010) (commenting that notice is not required under *Powell* for an aggravated sentence based on RCW 9.94A.535(2)(c) for post-*Blakely* resentencing). But, five justices agreed in *Powell* that going forward, aggravating factors under RCW 9.94A.535(3), which require proof of additional facts that must be found by a jury, must be charged in the information. 167 Wn.2d at 690 (Stephens, J., concurring); *id.* at 694 (Owens, J., dissenting). This was a change in when and how notice that the prosecutor would seek an exceptional sentence under RCW 9.94A.535(3) would be given, but not a change in whether notice was required.

¶39 *Powell* did not address whether notice is required for an aggravating factor based on criminal history under RCW 9.94A.535(2). Powell's exceptional sentence was comprised exclusively of factors that must be found by a jury. *Id.* at 676-77; RCW 9.94A.535(3). Also, the *Powell* opinions focused on notice for factors to be proved to the jury. *See* 167 Wn.2d at 689-90 (Stephens, J., concurring) (detailing the history of the right to trial by jury and citing the "motivating premise behind the jury trial right"); *id.* at 695 (Owens, J., dissenting) ("Since aggravating circumstances are essential elements of a crime that must be charged in an information, submitted to a jury, and proved beyond a reasonable doubt, in the absence of such notice, I must

respectfully dissent."). Therefore, *Powell* does not decide whether notice is required where the State seeks an exceptional sentence based on prior convictions under RCW 9.94A.535(2)(c).

¶40 Edvalds next contends that the State's failure to provide notice regarding aggravating factors prior to trial violated his due process right to notice. Under article I, section 22 of the Washington Constitution, "the accused shall have the right . . . to demand the nature and cause of the accusation against him." This requires that "[a] criminal defendant is to be provided with notice of all charged crimes." *State v. Schaffer*, 120 Wn.2d 616, 619, 845 P.2d 281 (1993). The Sixth Amendment of the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." The protection afforded by each of these constitutional provisions is the same. *State v. Hopper*, 118 Wn.2d 151, 156, 822 P.2d 775 (1992). Constitutional challenges are reviewed de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

¶41 Additional process is not required for sentences based on prior convictions because the statute itself provides notice. Generally, statutes, particularly criminal statutes, operate prospectively to give fair warning that a violation carries specific consequences. *State v. Pillatos*, 159 Wn.2d 459, 470, 150 P.3d 1130 (2007). The plurality in *Powell* agreed that "Washington's exceptional sentencing scheme was in place and provided notice of the sentence he could receive." *Powell*, 167 Wn.2d at 687.

¶42 Furthermore, there is no reason to require notice by the prosecutor to the defendant on RCW 9.94A.535(2)(c) aggravators. No fact is to be proved to the jury. Nothing impacts the trial. "Specifically, *Blakely* does not require fact finding by a jury when a sentencing provision allows the exceptional sentence to flow *automatically* from the existence of free crimes. This is what RCW 9.94A.535(2)(c) does."

*Alvarado*, 164 Wn.2d at 568.[5] The fact of free crimes is known to the defendant. The fact of the statute providing for an exceptional sentence is known to the defendant. The trial court has authority under the statute to impose the exceptional sentence whether or not requested by the prosecutor, if the necessary factors are present. The calculation is automatic. Avoiding conviction on the immediate charges is the only trial strategy to avoid the application of the automatic calculation of the free crimes aggravating factor.

¶43 In this case, the purposes of the exceptional sentence statute would be thwarted by the application of the *Powell* requirement of notice in the charging document for the free crimes aggravating factor. Here, the convictions justifying the exceptional sentence arose after trial. The State had not even charged Edvalds with the other crimes before trial. It would be unfair to prohibit the State from then seeking an exceptional sentence. It would also be contrary to the intent of the legislature, which intended to give judges the discretion to impose an exceptional sentence where certain crimes would otherwise go unpunished. RCW 9.94A.535(2)(c); LAWS OF 2005, ch. 68, § 1.

¶44 Because the free crimes aggravator of RCW 9.94A-.535(2)(c) falls into the prior convictions exception to both the statute and to *Blakely*, additional procedural requirements do not attach and notice is not required before the State seeks or the court imposes an exceptional sentence. We hold that the trial court did not err by imposing an exceptional sentence.

### III. Statement of Additional Grounds

¶45 In a statement of additional grounds, Edvalds raises several issues.

¶46 Edvalds argues that he was prevented from calling Joel Brackett as a witness to support his other

---

[5] Notice was given before sentencing and not at issue in *Alvarado*. 164 Wn.2d at 560.

suspect claim, where Brackett's physical description and vehicle matched those in the security video. Evidentiary decisions are reviewed for an abuse of discretion. *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 104, 187 P.3d 243 (2008). The trial court excluded Brackett's testimony pretrial, because he could not offer any relevant testimony. It is not an abuse of discretion to exclude irrelevant evidence. The trial court did not, however, exclude the defendant's argument. In fact the defense put on witnesses and argument that Brackett committed the crime. The trial court did not err.

¶47 Because Edvalds's remaining arguments are not supported by credible evidence in the record, we cannot review them. *See* RAP 10.10(c) (an appellate court will not consider an argument made in a statement of additional grounds for review if it does not inform the court of the nature and occurrence of the alleged errors). If material facts exist that have not been previously presented and heard, and if those facts require vacation of the conviction, then Edvalds's recourse is to bring a properly supported personal restraint petition. *See* RAP 16.4.

¶48 Also, to the extent that the jury disregarded arguments and evidence raised at trial, this court defers to the trier of fact on issues of testimony, credibility of the witnesses, and the persuasiveness of the evidence. *State v. Bencivenga*, 137 Wn.2d 703, 708-09, 974 P.2d 832 (1999). Edvalds failed to present any meritorious issues in his statement of additional grounds.

¶49 We affirm.

ELLINGTON and SPEARMAN, JJ., concur.

Reconsideration denied October 1, 2010.

Review denied at 171 Wn.2d 1021 (2011).