## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 73934-4-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NICHOLAS SIMUKAS ROBLES, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 9, 2015 |
| | ) | |

DWYER, J. — Nicholas Robles was convicted of rape of a child in the third

degree. On appeal, Robles contends that the trial court improperly denied his

motion for a mistrial and that the prosecutor engaged in misconduct by

expressing his personal opinion regarding the victim's truthfulness and Robles'

guilt. Robles also raises additional issues in a statement of additional grounds.

Finding no error, we affirm.

I

Robles and S.K. first met in the summer of 2010. Robles was 28 years

old at the time. When S.K. told Robles that she was 14 years old, he responded

by joking that he would have to stay away from her because she was so young.

Robles and S.K. saw one another several times that summer. On one

occasion, they encountered each other at the gym. Robles told S.K. that she had

a nice body and a "nice ass" and, later, asked for her telephone number, which she gave him.

S.K. and Robles began exchanging e-mails in August of 2010. In one e-mail, Robles asked S.K. to "send [him] some pictures." She responded by texting him a picture of her bare breasts. S.K. explained, "I felt like if I did he would be more interested in me and wanting to be with me in general." When S.K. subsequently told him that she was "done with pictures like that," he replied, "You don't do pics. That is not good." She then told him that if he wanted to see her nude, he could come look at her in person.

S.K. and Robles ultimately agreed to meet in January of 2011. They decided that S.K. would skip school, Robles would pick her up, and they would go to his house and use the hot tub. When they arrived at Robles' house, S.K. went into the bathroom and changed into her swimsuit. She felt "weird" at this time, wondering why she had come there and wishing that she had not. Her physical interaction with boys up to that point was limited to kissing a boy in the seventh grade. When she made the plan to meet Robles, S.K. thought they would go to the hot tub and hang out and then she would go home. She thought perhaps they would kiss and cuddle.

In the hot tub, S.K. sat on the opposite side of Robles, but he instructed her to come closer to him. Robles placed S.K. on his lap and held her there, preventing her from moving away. They eventually left the hot tub and went into Robles' bedroom.

In the bedroom, Robles asked for a massage. When S.K. was massaging his chest, Robles "tore" off her bikini bottoms. That was when S.K. realized "that [they] were going to do something. [They] were going to have sex." S.K. "didn't want to, but [she] didn't show that . . . . [She] just kept quiet." "[T]hen [Robles] pushed [S.K.] onto the side of the bed and he started to try and put his penis into [her] vagina." S.K. told him, "No, don't put it in -- not in there, I would rather do it in the ass." S.K. later explained that she said this because "[she] figured that if [her] vagina wasn't penetrated, [she] would still be a virgin. Because at that point, [she] was a virgin." Robles stepped away to apply lubricant to his penis. As he approached S.K. again, "[she] felt numb. [She] [did] not know[ ] how to speak, how to say anything. [She] just lay still." As Robles was inserting his penis into her anus, S.K. told him "No, don't," but he persisted. "[S.K.] was just quiet for the rest of the time. [She] didn't say anything else." S.K. later described that, when Robles forced his penis into her anus, she felt "burn[ing] or sting[ing]" pain.

After he ejaculated inside of her, Robles instructed S.K. to shower. When she used the toilet before showering, S.K. saw blood. She cried when she was in the bathroom, wanting to wash everything off and "get out of there." S.K. was in too much pain to put on her jeans again so, after her shower, she asked for a pair of sweatpants. Robles turned on the television and S.K. sat next to him, believing that they would cuddle. She thought that cuddling was the type of thing that happens "after something like that."

The day following the rape, S.K. told her parents what had happened. Though her father wanted to call the police, S.K. asked him not to, and he did not. In April of 2012, S.K. told her boyfriend about what Robles had done, and her boyfriend told her that, under Washington law, she had been raped. Following that conversation, S.K. contacted a sexual assault hotline and was referred to the Clark County Children's Justice Center. A criminal investigation ensued.

Robles was subsequently contacted by Officer Joshua Phelps of the Battle Ground Police Department. Robles told Phelps that he believed that S.K. was 13 years old when he met her. He also admitted that S.K. had sent him pictures of herself naked and in lingerie. He denied, however, having had any sexual contact with her.

Robles was ultimately charged with, and convicted of, rape of a child in the third degree. He now appeals.

II

Robles first contends that the trial court erred by denying his request for a mistrial after the prosecutor asked a question that, he claims, deprived him of a fair trial. We disagree.

> In determining whether a trial court abused its discretion in denying a motion for mistrial, [appellate] court[s] will find abuse "only when no reasonable judge would have reached the same conclusion." [State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (internal quotation marks omitted).] "The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial." [Hopson, 113 Wn.2d at 284; accord State v. Weber, 99 Wn.2d 158, 165, 659 P.2d 1102 (1983) ("[T]he correct

question [is] [d]id the remark prejudice the jury, thereby denying the defendant his right to a fair trial?").] In determining the effect of an irregular occurrence during trial, we examine "(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it." [Hopson, 113 Wn.2d at 284.]

State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994).

Juries are presumed to follow the trial court's instructions. State v. Williams, 159 Wn. App. 298, 321, 244 P.3d 1018 (2011); accord State v. Hanna, 123 Wn.2d 704, 711, 871 P.2d 135 (1994).

The following exchange, which occurred during the prosecutor's direct examination of S.K., is at issue:

> Q. Okay. Now, when did you find out that this case was definitely going to trial?
> A. On Thursday.
> Q. And that was last -- so today is the 19th. Was that the 15th?
> A. Yes. I got a phone call from Sherry, and she said that I had to be here on Monday.
> Q. And was anyone -- since Thursday, has anyone been contacting your friends or family about this case?
> A. Yes.
> > [Defense counsel]: Objection; relevance.
> > THE COURT: Relevance, Counsel?
> > [Defense counsel]: We have -- I think we need a conference outside the presence of the jury.
> > [Prosecutor]: I would agree with that, Your Honor.
> > THE COURT: Okay. Ladies and gentlemen, let's have you retire to the jury room for a few moments. We will call you back shortly.

Outside the presence of the jury, the prosecutor informed the court and, for the first time, Robles' counsel that he believed that members of Robles' family, and several of Robles' friends, had been contacting S.K.'s family since the case had been called ready for trial. The prosecutor believed that "it would go to show consciousness of guilt [or] possible intimidation of the State's witness."

The trial court ruled that, "without an implication of [Robles], I think we're on a[n ER] 403 problem here[,] where we've got somewhat limited relevance at best but very highly inflammatory and prejudicial possible effect." The court sustained Robles' objection.[1]

Robles nevertheless moved for a mistrial based on the prosecutor's question.[2] Robles argued that the question necessarily led to the conclusion that it was him who had been contacting her friends and family and that the jury could not disregard the question even if instructed to do so. The State responded that the question was of minor moment in the context of the trial to that point and, in particular, S.K.'s testimony, which had lasted approximately 1.5 hours by then and focused on Robles' rape of S.K. and events proximate thereto. The prosecutor also argued that the question was innocuous in that no mention was made of either Robles or threats.

The trial court denied the motion, stating:

> The motion before the Court is for a mistrial based on the question that immediately preceded the break. The Court will note that the remedy of mistrial is one of the most drastic remedies that are -- that is available under circumstances. The Court's -- the Court concludes that under the circumstances, the fact that the question came up in somewhat an innocuous fashion, that it was not answered, and that it is relatively small in the grand scheme of things is insufficient to rise to the level to grant a mistrial under the circumstances.

---

[1] The trial judge's concerns were warranted. While the prosecution may offer evidence that a defendant threatened a witness as an implication of guilt, State v. Kosanke, 23 Wn.2d 211, 215, 160 P.2d 541 (1945), where the threat does not come from the defendant, the State must show that it was made by someone acting with his knowledge and consent. State v. Bourgeois, 133 Wn.2d 389, 400, 945 P.2d 1120 (1997). No such evidence was presented here. Moreover, even if the evidence had been otherwise admissible, the trial court would not have abused its discretion by concluding that, despite its relevance, the evidence was unfairly prejudicial. See ER 403.

[2] "[S]ince [the day you found out that this case was going to trial], has anybody been contacting your friends and family about this case?"

When the jury returned, before the prosecutor's questioning resumed, the trial court instructed the jury as follows:

> All right. So ladies and gentlemen, we -- right before the break, there was a question that was pending. I'm instructing you to disregard that question. It wasn't answered, but it's been deemed by the Court to be inadmissible. So that's an order for you to disregard and -- that last question before we took the break.
> Go ahead, Mr. Robinson.[3]

The record herein supports the trial court's conclusion that Robles was not prejudiced by the prosecutor's improper question, as remedied by the trial court's curative instruction. Although Robles repeatedly asserts that the prosecutor's question "carried with it the implication that Robles was threatening the State's key witness because he knows he is guilty," in actuality, the prosecutor's question mentioned neither Robles nor any threats, much less any threats to S.K. Rather, it referred to "anyone" "contacting" S.K.'s family or friends. Moreover, the question arose in the context of S.K. being asked when and how she had been made aware that the case was proceeding to trial and S.K. responding that she had been contacted by someone named "Sherry," presumably a representative of the prosecutor's office. The questioning to that point was unrelated to any communications, much less nefarious communications, from Robles, or people acting on his behalf, to S.K. or her family. The question, in the form and context in which the jury heard it, was innocuous. Although the subject matter could have become prejudicial, the questioning was stopped before it reached that

---

[3] The prosecutor then resumed his questioning on a different topic, asking: "[Y]ou described this occurring at the defendant's home. Where is that – what's the location of that home?"

-7-

point.[4] The trial court, which was in the best position to evaluate the effects of the question, did not abuse its discretion by finding that the irregularity of the prosecutor's question did not rise to a level that would warrant a mistrial and that, instead, a curative instruction was sufficient.

III

Robles next contends that the prosecutor engaged in flagrant and ill-intentioned misconduct. This is so, he asserts, because the prosecutor expressed his personal belief regarding S.K.'s truthfulness and Robles' guilt. We disagree.

To show that a prosecutor's comment denied a defendant a fair trial, the defendant must show that a prosecutor's conduct was both improper and prejudicial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Where a prosecutor's comments are improper and defense counsel objected at trial, the defendant must show a substantial likelihood that the comments prejudiced the jury's verdict. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). "[O]nly those errors [that] may have affected the outcome of the trial are prejudicial." State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

However, if a defendant fails to object and to request a curative instruction, the defendant waives a prosecutorial misconduct claim unless the

---

[4] The fact that no prejudicial information had yet been admitted when Robles objected distinguishes this case from State v. Babcock, 145 Wn. App. 157, 185 P.3d 1213 (2008), upon which Robles relies. Therein, the defendant moved for a mistrial after the State decided, mid-trial, to drop the child molestation charge against him. Evidence related to the child molestation charge had already been admitted and, the defendant asserted, the prejudice resulting from this evidence could not be cured by a jury instruction to disregard it. The trial court denied the defendant's request for a mistrial. The Court of Appeals reversed, agreeing with the defendant that the circumstances therein were such that "no instruction [could] 'remove the prejudicial impression'" created by the evidence of child molestation. Babcock, 145 Wn. App. at 164 (quoting State v. Escalona, 49 Wn. App. 251, 255, 742 P.2d 190 (1987)).

comment "was so flagrant [and] ill-intentioned that an instruction could not have cured the prejudice." State v. Corbett, 158 Wn. App. 576, 594, 242 P.3d 52 (2010). "'An objection is unnecessary in cases of incurable prejudice only because there is, in effect, a mistrial and a new trial is the only and the mandatory remedy.'" State v. Walker, 182 Wn.2d 463, 477, 341 P.3d 976 (2015) (internal quotation marks omitted) (quoting Emery, 174 Wn.2d at 762). "The absence of an objection by defense counsel strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." State v. Edvalds, 157 Wn. App. 517, 525-26, 237 P.3d 368 (2010) (citing State v. Swan, 114 Wn.2d 613, 661, 790 P. 2d 610 (1990)).

Because it is entirely for the jury to determine whether a witness has testified truthfully, it is misconduct for a prosecutor to vouch for a witness by "'stat[ing] a personal belief as to the credibility of [that] witness.'" State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010) (quoting State v. Warren, 165 Wn.2d 17, 30, 195 P.3d 940 (2008)). Improper vouching generally occurs (1) if the prosecutor expresses his or her personal belief as to the veracity of the witness or (2) if the prosecutor indicates that evidence not presented at trial supports the witness's testimony. Ish, 170 Wn.2d at 196 (citing United States v. Brooks, 508 F.3d 1205, 1209 (9th Cir. 2007)). However, because prosecutors have wide latitude to argue reasonable inferences from the facts concerning witness credibility, a reviewing court will not find prejudicial error "unless it is clear and unmistakable that counsel is expressing a personal opinion." State v. Allen, 176 Wn.2d 611, 631, 294 P.3d 679 (2013).

Herein, Robles asserts broadly that the prosecutor engaged in misconduct by stating his personal opinion regarding both S.K.'s credibility and Robles' guilt. However, Robles specifically identifies only one allegedly problematic statement, which is as follows:

> What's the one thing they don't agree with? What happened inside that house. Why would we agree and believe her on all these other details before and after, but not believe her on the one part of the entire case, the one reason we're here, the sexual abuse? Why would we not believe her when we believe all these other facts?

Robles argues that the prosecutor's use of the pronoun "we" constitutes vouching.

While it is true, as the State acknowledges on appeal, that prosecutors should generally avoid using the pronoun "we" in closing argument, its use is not always improper. In United States v. Younger, 398 F.3d 1179 (9th Cir. 2005), for example, the Ninth Circuit concluded that the prosecutor had not engaged in misconduct by repeatedly saying "we know" in reference to what he argued was shown by the evidence.[5] While ultimately concluding that the prosecutor's statements were not improper, the court also acknowledged the ambiguity caused by a prosecutor using the phrase "we know," reasoning thusly:

> We do not condone the prosecutors' use of "we know" statements in closing argument, because the use of "we know" readily blurs the line between improper vouching and legitimate summary. The question for the jury is not what a prosecutor believes to be true or what "we know," rather, the jury must decide

---

[5] Therein, the prosecutor said, for example: "'[W]e know [defendant] possessed the backpack. We know that. We know inside the backpack were the 81 rocks wrapped for retail sale and the 18 packets of cocaine powder also wrapped for sale' and '[w]e know that in the neighboring compartment, the bigger compartment, they had two loaded firearms.'" Younger, 398 F.3d at 1191.

what may be inferred from the evidence. We emphasize that prosecutors should not use "we know" statements in closing argument.

Nonetheless, the record in this case confirms that the prosecutors used the phrase "we know" to marshal evidence actually admitted at trial and reasonable inferences from that evidence, not to vouch for witness veracity or suggest that evidence not produced would support a witness's statements. [United States v. ]Leon–Reyes, 177 F.3d [816,] at 822 [(9th Cir. 1999)]. The prosecutors' statements thus were not improper. [United States v. ]Cabrera, 201 F.3d [1243,] at 1250 [(9th Cir. 2000)]; [United States v. ]Toomey, 764 F.2d [678,] at 681 [(9th Cir.1985)]. Moreover, in the context of the entire trial, we conclude that the prosecutors' use of "we know" did not materially affect the verdict. See Toomey, 764 F.2d at 681.

Younger, 398 F.3d at 1191.

Because a prosecutor's use of the pronoun "we" in closing argument is ambiguous, and because the determination of whether it constitutes misconduct depends on the context in which it is used, courts are particularly reliant on defense counsel to object and make a record when its use appears "critically prejudicial." Edvalds, 157 Wn. App. at 525-26. Herein, Robles did not object. Due to the absence of an objection, we are not informed of the trial court's view on the matter of either the intent or the effect of the prosecutor's statement. Without this, Robles has not provided us a basis to conclude that the prosecutor's comments were "clear[ly] and unmistakabl[y]" improper. Allen, 176 Wn.2d at 631. Moreover, even if we were to conclude that the prosecutor's comments were improper, they certainly did not rise to the level of being flagrant and ill-intentioned. Furthermore, had Robles objected, any potential prejudice could have been cured by a proper instruction. See Younger, 398 F.3d at 1190 (prosecutor's statement that "'the government believes that [defendant] did

possess cocaine and cocaine base for sales purposes'" was not prejudicial where defense counsel immediately objected and the prosecutor immediately rephrased his statement).[6]

The prosecutor's remarks were not improper, and certainly were not flagrant and ill-intentioned. Moreover, if they were objectionable, they could have been remedied by a curative instruction. Therefore, Robles has not carried his burden of showing that these remarks entitle him to a new trial.

IV

Robles submits a pro se statement of additional grounds pursuant to RAP 10.10. He does not establish an entitlement to relief on any of the grounds presented.

"[T]he appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Generally, "the appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review." RAP 10.10(c); accord State v.

---

[6] In addition to his contention regarding the prosecutor's use of "we," Robles asserts that the prosecutor vouched for S.K. by arguing that, based on the level of detail that S.K. was able to provide about Robles raping her and about her surroundings that day, it was not believable that S.K. had fabricated her story. However, prosecutors are permitted wide latitude to argue reasonable inferences from the evidence concerning witness credibility, Allen, 176 Wn.2d at 631, and the prosecutor's argument herein—that the level of detail that S.K. testified to indicated that she was credible—was a permissible inference from the evidence.

It was also not improper for the prosecutor to describe Robles' story as "ridiculous." "[W]ords like 'ridiculous' or 'preposterous' in relation to testimony are not, alone, an improper expression of personal opinion as long as the prosecutor is arguably drawing an inference from the evidence." State v. Lindsay, 180 Wn.2d 423, 438, 326 P.3d 125 (2014). Robles claimed that S.K's detailed memory of the house in which the crime occurred came from pictures she saw on a camera phone. However, the evidence was that the pictures on the phone were taken *before* the house was remodeled, but the details S.K. gave were consistent with the house as it looked *after* the remodel. In calling Robles' story "ridiculous," the prosecutor was arguing that his account was not credible, which was permissible argument.

_Meneses_, 149 Wn. App. 707, 715-16, 205 P.3d 916 (2009) (It is not our role "to search the record to find support for the defendant's claim.").

While Robles lists several issues that could potentially be reviewable, he has not sufficiently identified the nature of the alleged errors. Because none of Robles' claims of error are sufficiently developed for review, we decline to reach them.

Affirmed.

We concur: