**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | |
| | No. 69064-7-I |
| v. | |
| | UNPUBLISHED OPINION |
| JARRAY FRANSISCUS WHITE, | |
| Appellant. | FILED: November 12, 2013 |

DWYER, J. — Jarray White appeals from the judgment entered on a jury's verdict finding him guilty of one count of unlawful possession of a firearm in the first degree. White contends that his conviction should be reversed both because a witness uttered the phrase "DOC hearing" even though the use of the terms "DOC" and "Department of Corrections" was prohibited by the trial court's in limine ruling and because, in White's view, the prosecutor engaged in misconduct by improperly shifting the burden of proof in closing argument to the jury. In his statement of additional grounds, White also contends that the trial court erred by (i) denying his Knapstad[1] motion, (ii) by denying his motion to suppress evidence of the firearm as being the product of a pretextual stop, unlawful seizure, and unlawful search, and (iii) by imposing legal financial obligations as part of his sentence. Finding no error, we affirm.

---

[1] State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986).

I

Around 1:30 a.m. on August 24, 2011, White was driving a white Chevrolet El Camino on 64th Avenue S. in an unincorporated area of King County known as Skyway. King County Sheriff's Deputies Robert Nishimura and Joseph Eshom, on patrol on 64th Avenue S., observed White fail to signal before making a left turn. Deputy Nishimura made a u-turn and initiated a traffic stop of White's vehicle. Both deputies then exited the patrol vehicle, with Deputy Eshom assuming a cover position at the rear of the El Camino after determining that there were no passengers in that car.

Deputy Nishimura approached the driver's side of the vehicle and informed White of the reason he had been pulled over. Deputy Nishimura then asked White for his driver's license. After White gave Deputy Nishimura his license, White began reaching into his right vest pocket. Deputy Nishimura asked White what he was doing, but White did not respond. Deputy Nishimura requested that White stop reaching into his pocket; White again did not respond, but instead kept reaching into his pocket and blankly stared straight ahead. Deputy Nishimura believed that White might be reaching for a weapon. Concerned for his safety, Deputy Nishimura asked White to step out of the vehicle. Deputy Nishimura opened the car door and asked White if he had any weapons on him. White responded, "What did I do?"

Deputy Nishimura attempted to put White's hands behind his back in order to perform a pat-down. According to Deputy Nishimura, White let out an "animalistic" scream, and assumed a fighting stance with his fists raised. Deputy

Nishimura grabbed White by the collar and attempted to throw him to the ground, but White escaped the deputy's grasp, turned around, and took off running.

Deputies Nishimura and Eshom pursued White on foot, yelling for him to stop. White again reached into his right vest pocket while he ran. Deputy Eshom saw White pull a gun from his vest pocket, and shouted, "Gun." Deputy Eshom witnessed White throw the gun aside, and saw the gun hit a fence.[2] Deputy Nishimura, upon hearing his partner's warning, fired his stun gun, already in his hand, at White. White continued to struggle with the deputies, but the deputies eventually subdued and handcuffed him. Deputy Eshom retrieved the firearm, a loaded semi-automatic .380 caliber pistol, from near the fence.

The State charged White with one count of unlawful possession of a firearm in the first degree, with predicate offenses of assault in the second degree and burglary in the first degree, serious offenses under RCW 9.41.010.[3] White filed a Knapstad motion to dismiss for insufficient evidence, contending that the 1996 burglary and assault convictions could not serve as predicate offenses because White was not given notice at the time of the entry of judgment

---

[2] Deputy Nishimura also saw the gun hit the fence, but did not see it leave White's hand.

[3] "A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense as defined in this chapter." RCW 9.41.040(1)(a). "'Serious offense' means any of the following felonies or a felony attempt to commit any of the following felonies, as now existing or hereafter amended: (a) Any crime of violence." RCW 9.41.010(16).

The State initially planned to introduce evidence of a 1992 conviction for assault in the second degree; however, it opted not to use that conviction as a predicate offense because the attached fingerprints could not be verified. White was also convicted of assault in the second degree in 1996 and it is this assault conviction that the State used as a predicate offense, along with the burglary conviction. Reference to the 1996 assault conviction appears in the judgment and sentence for the burglary conviction, a copy of which was admitted into evidence.

that he had lost his right to possess firearms.[4] The trial court, relying on State v. Carter, 127 Wn. App. 713, 112 P.3d 561 (2005), denied the motion, holding that White did in fact have notice that he no longer had the right to possess firearms, as he had been so advised when he was convicted of other felonies between 1996 and 2011.[5]

Prior to trial, White moved to suppress evidence of the firearm, contending that the traffic stop was pretextual, that Deputy Nishimura unlawfully seized White when he asked him to step out of the vehicle, and that Deputy Nishimura lacked a sufficient basis to lawfully frisk White. After a hearing on the motion, the trial court made the following pertinent findings of fact:

d) Deputy Nishimura and Deputy Eshom observed the defendant make a left turn without signaling.
e) Deputy Nishimura's attention was initially drawn to the vehicle because 1-2 days earlier he had seen a similar car "duck him," meaning he had seen a car that he was looking for a traffic stop [sic] and was considering pulling the car over but the car had escaped his line of sight by the time he was able to attempt a traffic stop.
f) Upon seeing the defendant fail to signal the turn, Deputy Nishimura immediately turned his patrol car around to pursue the defendant.
g) Deputy Eshom ran the defendant's license plate.
. . .
l) Deputy Nishimura advised the defendant of the reason for the traffic stop and asked him for his driver's license and proof of insurance.
. . .
n) The defendant was repeatedly reaching in his right vest pocket.
o) Deputy Nishimura told the defendant to stop reaching in his pocket and asked the defendant "What are you reaching for?"
. . .

---

[4] Judgment was entered for both convictions at the same hearing.
[5] The trial court also held that notice is an affirmative defense that White could raise at trial. Defense counsel opted not to pursue that affirmative defense.

> q) Deputy Nishimura ordered the defendant to step out of the car and asked the defendant if he had a gun.

The trial court also made the following pertinent conclusions of law:

> a) The officers were justified in making a traffic stop of the defendant based on probable cause to believe the defendant had committed the infraction of failing to signal a turn, as required by RCW 46.61.305.
> b) Deputy Nishimura was subjectively and objectively concerned for his safety based on the defendant reaching into his pocket, ignoring the officer's demands to stop and ignoring the officer's request, "What are you reaching for?"
> c) Deputy Nishimura reasonably ordered the defendant out of the vehicle based on his reasonable concern for his safety.
>   . . .
> f) The traffic stop was not pretextual as it was justified at its inception.

The trial court therefore denied White's motion to suppress.

White also filed a motion in limine to exclude the testimony of Kurt Saase, a fingerprint examiner, on the basis that his testimony was irrelevant and prejudicial, because it would inform the jury of White's prior incarcerations, given that the fingerprints Saase analyzed were obtained by the Department of Corrections (DOC). The trial court ruled that the testimony was admissible, so long as Saase omitted reference to who originally obtained the fingerprints. In order to avoid unnecessary prejudice to White, the trial court ruled that "they're not to refer to the DOC prints as coming from DOC or while he was incarcerated." At a later pretrial hearing, White's counsel requested that she be permitted to question Deputy Nishimura about his prior testimony at a DOC hearing without specifying the nature of the hearing. The State had no objection to defense counsel questioning Deputy Nishimura in this manner.

At the jury trial, White's counsel asked Deputy Nishimura, "Do you recall testifying in a prior hearing related to this in September of 2011?" Deputy Nishimura responded, "I – you'd have to refresh my memory of what, specifically, ma'am," at which time, White's counsel asked for a side bar. After the trial court conducted the side bar, White's counsel asked Deputy Nishimura, "Do you recall testifying in an earlier hearing related to this matter?" Deputy Nishimura responded, "Is this the DOC hearing you're asking about? If it's on a court hearing, I recall a 3.6 hearing a couple weeks ago." Defense counsel did not object to this response, nor did she move to strike the answer at any time.[6]

When the court took its midday recess, White's counsel moved for a mistrial. The trial court denied the motion, stating,

> [I]n the balance of things that I don't believe this is sufficient for me to grant a mistrial. Based upon what I heard and the questioning that was asked, I would be more than willing to be given instruction to the jury to disregard anything he said about a DOC hearing. . . . And he did not make a reference to being in department of corrections or jail hearing. So, you called it an administrative hearing immediately thereafter, and then he responded to that in [an] appropriate way.

Defense counsel declined the offer of a curative jury instruction.

White testified at trial, denying that he ever reached into his vest pocket during the traffic stop or was in possession of a firearm that night. White also testified that Deputy Eshom punched the back of his head and threatened to blow his head off, and that Deputy Nishimura used his stun gun on him more than five times. White admitted that he had been convicted of attempted theft in

---

[6] Counsel later stated that she "chose not to" object because she "didn't want to highlight what had just occurred."

the first degree in 2004. The State asked White if he ever filed a complaint against the deputies or hired an attorney in response to the alleged assault; White replied that he had not. Defense counsel objected only to the question regarding whether White had ever hired an attorney.

During closing argument, the prosecutor explained the meaning of "reasonable doubt" to the jury as follows:

> So, let's talk about reasonable doubt. When you're looking at those three elements and you're pondering and examining whether the State has met its burden, what is reasonable doubt? As Jury Instruction No. 3 has told you now, it is not beyond all doubt. You can't decide this case beyond all doubt because you weren't there. If you were there, you wouldn't be a juror. So it's beyond a reasonable doubt.
>
> It's got to be based on it's [sic] evidence or lack of evidence, and it's a reasonable doubt – it's a doubt for which a reason exists. It's not mere speculation.
>
> The instructions talk about an objective and reasonable examination of the evidence. The instructions talk about leaving passions or prejudice aside in deciding this case facts based on the evidence of this case. But what the instructions do not tell and you [sic] what you're not required to do is to check your common sense at the door. It's your collective, objective reasoning. It's your collective, reasonable basis and reasonable examination of the evidence. That's what a reasonable doubt is.

White did not object.

The jury found White guilty of unlawful possession of a firearm in the first degree. The trial court entered judgment, sentenced White to 50.75 months in custody, and imposed a $500 victim assessment fee and a $100 DNA collection fee.

White appeals.

II

White contends that the trial court erred by denying his motion for a mistrial, based on Deputy Nishimura's use of the phrase "DOC hearing" after use of the terms "DOC" and "Department of Corrections" was prohibited by the trial court. White asserts that Deputy Nishimura's use of the phrase "DOC" was so serious and prejudicial that it denied him his right to a fair trial. We disagree.

We review the trial court's decision to deny a motion for a mistrial for an abuse of discretion. State v. Williams, 159 Wn. App. 298, 321, 244 P.3d 1018, review denied, 171 Wn.2d 1025 (2011).

> In determining whether a trial court abused its discretion in denying a motion for mistrial, this court will find abuse "only 'when no reasonable judge would have reached the same conclusion.'" "The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial." In determining the effect of an irregular occurrence during trial, we examine "(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it."

State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994) (footnotes omitted) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

The three factors articulated in Johnson all support the trial court's denial of White's motion for a mistrial. Use of the phrase "DOC" by Deputy Nishimura was not serious—as the trial court noted, Deputy Nishimura did not use the words "Department of Corrections" or "jail," which would have indicated the meaning of "DOC." The comment was not highlighted by either party and the phrase "DOC" was not again mentioned during the trial. Evidence that White had

previously been incarcerated was cumulative—White admitted that he had previously been convicted of attempted theft in the first degree, and evidence of White's 1996 convictions for assault in the second degree and burglary in the first degree was admitted to prove the element of a predicate conviction for a serious offense. The first two factors thus clearly support the trial court's denial of White's motion for a mistrial.

Moreover, while the trial court did not instruct the jury to disregard the comment, defense counsel did not request that the trial court do so. The trial court offered to issue a curative instruction, but White's counsel declined the offer. Additionally, defense counsel neither objected to nor moved to strike Deputy Nishimura's reference to "DOC." Thus, the third factor also supports the trial court's denial of White's motion for a mistrial.

The remark made by Deputy Nishimura here—"Is this the DOC hearing you're asking about?"—is substantially similar to a remark made by a witness in State v. Hopson, 113 Wn. 2d 273. In that case, a witness testified that "the victim had known the defendant 'three years before he went to the penitentiary the last time,'" even though the trial court had excluded references to the defendant's criminal record. Hopson, 113 Wn.2d at 284, 286. The trial court denied the defendant's motion for a mistrial, because "the statement was 'not of such significance as to affect the fair trial . . .'" Hopson, 113 Wn.2d at 284. The Supreme Court agreed, noting that "[t]here was no information concerning the nature or number of prior convictions, and the jury had overwhelming evidence favoring conviction." Hopson, 113 Wn.2d at 286.

Here, Deputy Nishimura's reference to "DOC" similarly provided no information about the nature or number of White's prior convictions. As the trial court noted, Deputy Nishimura did not even use the words "Department of Corrections" or "jail," and responded appropriately when defense counsel referred to the DOC hearing as an "administrative hearing." Additionally, the jury heard ample testimony supporting its finding that White possessed a firearm. Deputies Nishimura and Eshom both testified that they witnessed White repeatedly reaching into his right vest pocket during the encounter. Deputy Eshom testified that he witnessed White pull a firearm from that pocket and throw it toward the fence. The only evidence to the contrary was White's own testimony, which the jury did not find to be credible. Similarly, the State's documentary evidence of White's prior convictions for serious offenses went essentially unrebutted. There is virtually no possibility that the jurors assigned significance to the deputy's single utterance of the letters "DOC." The trial court did not abuse its discretion by denying White's motion for a mistrial.

III

White next contends that his conviction should be reversed because in closing argument the prosecutor committed misconduct so flagrant that it could not have been cured by a limiting instruction. This is so, he asserts, because the prosecutor improperly shifted to White the State's burden of proof by stating, "It's your collective, objective reasoning. It's your collective, reasonable basis and

reasonable examination of the evidence. That's what a reasonable doubt is."[7]

We disagree.

"A defendant claiming prosecutorial misconduct must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial." State v. Miles, 139 Wn. App. 879, 885, 162 P.3d 1169 (2007). "'Counsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver on a motion for new trial or on appeal.'" State v. Russell, 125 Wn.2d 24, 93, 882 P.2d 747 (1994) (quoting Jones v. Hogan, 56 Wn.2d 23, 27, 351 P.2d 153 (1960)). Consequently, where a defendant chooses not to object and request a curative instruction, the argument is waived unless the prosecutor's comment "'is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury.'" State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

Here, the prosecutor did not engage in misconduct when she stated, "It's your collective, objective reasoning. It's your collective, reasonable basis and reasonable examination of the evidence. That's what a reasonable doubt is."

---

[7] In his statement of additional grounds, White also contends that the prosecutor improperly shifted the burden of proof when she stated in rebuttal that White never reported that he was assaulted or hired an attorney to file a claim against the deputies. The prosecutor made no such statement during either closing argument or rebuttal. Rather, the prosecutor asked White on cross-examination whether he had filed a complaint or hired an attorney in regard to his claim that the deputies had assaulted him. Contrary to White's assertion, this line of questioning did not shift the burden of proof on any element of the charged offense. The prosecutor's questions were a proper means of impeaching White's testimony. As White fails to demonstrate either misconduct or prejudice, his contention lacks merit.

No. 69046-7-I/12

This statement must be read in context with the rest of the prosecutor's closing argument. See Miles, 139 Wn. App. at 885. Immediately prior to this statement, the prosecutor told the jury, "[W]hat the instructions do not tell and you [sic] what you're not required to do is to check your common sense at the door." The prosecutor encouraged the jurors to reasonably examine the evidence and discuss the case amongst themselves. Such an argument is not improper.[8]

Moreover, even if this comment had constituted misconduct, it was not "so flagrant and ill-intentioned" that it "could not have been neutralized by a curative instruction to the jury." McKenzie, 157 Wn.2d at 52. Nothing in the record indicates any ill intent on behalf of the prosecutor. Moreover, the trial court properly instructed the jury as to the meaning of reasonable doubt: "A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence." Jury Instruction 3. The trial court also properly instructed the jury that they should deliberate collectively:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to reexamine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a

---

[8] "We want juries to deliberate, not merely vote their initial impulses and move on." State v. Cross, 156 Wn.2d 580, 616, 132 P.3d 80 (2006).

- 12 -

No. 69046-7-I/13

verdict.

Jury Instruction 2. The jury is presumed to follow the court's instructions. State v. Gamble, 168 Wn.2d 161, 178, 225 P.3d 973 (2010). Accordingly, in the event that the prosecutor had engaged in misconduct by making the challenged argument, any such misconduct would have been neutralized by the trial court's correct articulation of the reasonable doubt standard in its instructions to the jury. A request for the court to remind the jury of these instructions in response to the prosecutor's argument would have cured any conceivable prejudice.

In summary, there was no misconduct. Furthermore, even if there had been, White waived this claim of error. He cannot obtain appellate relief on these grounds.

IV

White contends, in his statement of additional grounds, that the trial court erred by failing to grant his Knapstad motion to dismiss for insufficient evidence. This is so, he contends, because his conviction for burglary in the first degree could not validly serve as a predicate offense because the State in that case failed to provide notice of his loss of his right to possess firearms upon his conviction. However, "a defendant who goes to trial may not appeal the denial of a Knapstad motion." State v. Jackson, 82 Wn. App. 594, 608, 918 P.2d 945 (1996). Accordingly, White is not entitled to relief on this claim.[9]

---

[9] White also contends that the trial court erred by instructing the jury that they could consider White's convictions for burglary in the first degree and assault in the second degree when assessing White's credibility. The trial court gave no such instruction. The trial court instructed the jury that it could consider White's attempted theft conviction when assessing

- 13 -

V

In his statement of additional grounds, White also contends that the trial court erred by denying his motion to suppress the firearm, alleging that the traffic stop was pretextual and that he was unlawfully seized when Deputy Nishimura asked him to step out of the vehicle.[10] He is wrong.

We review de novo whether a warrantless stop is constitutional. State v. Martinez, 135 Wn. App. 174, 179, 143 P.3d 855 (2006) (citing State v. Rankin, 151 Wn.2d 689, 694, 92 P.3d 202 (2004)). Similarly, we review de novo whether the trial court's conclusions of law are supported by the findings of fact. Martinez, 135 Wn. App. at 179 (citing State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)). Unchallenged findings of fact are verities on appeal. State v. Luther, 157 Wn.2d 63, 78, 134 P.3d 205 (2006). As White does not challenge the trial court's findings of fact, those findings are verities on appeal.

White contends that the traffic stop made by the deputies was pretextual. As the Supreme Court has explained, a pretextual stop occurs when

> the police [pull] over a citizen, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving. Therefore the reasonable articulable suspicion that a traffic infraction has occurred which justifies an exception to the warrant requirement for an ordinary traffic stop does not justify a stop for criminal investigation.

---

White's credibility, but that the jurors could consider White's burglary and assault convictions only in considering whether the elements of unlawful possession of a firearm in the first degree were proved.

[10] White additionally contends that the trial court erred by denying his motion to suppress the firearm because Deputy Nishimura had no justification for frisking him. However, the firearm was not obtained as a result of a frisk, but rather was obtained after White threw the firearm at a fence. Thus, there is no factual basis for White's challenge to the denial of his motion to suppress on this ground.

State v. Ladson, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). Pursuant to Ladson, the trial court determines whether a stop is pretextual by considering the totality of the circumstances. 138 Wn.2d at 358-59. In doing so, the court must consider "both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Ladson, 138 Wn.2d at 359. Even if "the legitimate reason for the stop is secondary and the officer is motivated primarily by a hunch or some other reason," the stop is not pretextual where the officer has an "actual, conscious, and independent" reason to make the stop. State v. Chacon Arreola, 176 Wn.2d 284, 297-300, 290 P.3d 983 (2012).

Here, the trial court found that the deputies had not only a reasonable, articulable suspicion that a traffic infraction had occurred, but indeed had probable cause to believe that White had committed a traffic infraction. The trial court clearly considered the deputies' subjective intent and objective reasonableness, as evidenced by its findings of fact that "Deputy Nishimura and Deputy Eshom observed the defendant make a left turn without signaling," "[u]pon seeing the defendant fail to signal the turn, Deputy Nishimura immediately turned his patrol car around to pursue the defendant," and "Deputy Eshom ran the defendant's license plate." Although, as the trial court recognized, "Deputy Nishimura's attention was initially drawn to the vehicle because 1-2 days earlier he had seen a similar car 'duck him,'" the deputies had a legitimate and independent reason to stop the vehicle when they saw it fail to signal before making a left turn.

Neither was White unlawfully seized when asked to step out of the vehicle.

- 15 -

Once a driver has been lawfully stopped, a police officer may order him or her to get out of the vehicle, "regardless of whether the driver is suspected of being armed or dangerous or whether the offense under investigation is a serious one." State v. O'Neill, 148 Wn.2d 564, 582, 62 P.3d 489 (2003) (quoting Charles W. Johnson, *Survey of Washington Search and Seizure Law: 1998 Update*, 22 SEATTLE U. L. REV. 337, 461 (1998)). Such an intrusion is de minimis, especially when officer safety is at issue. Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) ("What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety."); see also O'Neill, 148 Wn.2d at 582 (stepping out of the vehicle is a de minimis intrusion). Here, the trial court found that Deputy Nishimura was both objectively and subjectively concerned for his safety when White reached into his pocket and was unresponsive to the deputy's questions during the traffic stop. This conclusion is adequately supported by the trial court's findings that White "was repeatedly reaching in his right vest pocket" and that Deputy Nishimura told White to stop and asked him what he was reaching for before ordering White out of the vehicle. As the traffic stop was justified at its inception, and Deputy Nishimura was objectively and subjectively concerned for his safety, Deputy Nishimura was lawfully entitled to order White out of the vehicle. The trial court did not err by denying White's motion to suppress.

VI

White finally contends, in his statement of additional grounds, that the trial court erred by imposing legal financial obligations (LFOs) on him as part of his

sentence. He claims that the record does not support the factual finding that he has the ability to pay such obligations. However, White fails to distinguish between mandatory and discretionary LFOs. "[F]or *mandatory* legal financial obligations, the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing these obligations." State v. Lundy, __ Wn. App. __, 308 P.3d 755, 758 (2013). The only costs imposed by the trial court here were a victim assessment fee of $500 and a DNA collection fee of $100. The $500 victim assessment is required by RCW 7.68.035, irrespective of the defendant's ability to pay. State v. Curry, 62 Wn. App. 676, 681, 814 P.2d 1252 (1991), aff'd, 118 Wn.2d 911, 829 P.2d 166 (1992). The $100 DNA collection fee is required by RCW 43.43.7541, also irrespective of the defendant's ability to pay. State v. Thompson, 153 Wn. App. 325, 336, 223 P.3d 1165 (2009). Accordingly, the trial court acted properly in imposing these costs on White.

Affirmed.

We concur: