[No. 55885–0. En Banc. September 14, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. ERVIN O'DELL HOPSON, *Appellant.*

*Jesse Wm. Barton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert S. Lasnik, Chief of Staff,* for respondent.

UTTER, J.—Ervin O'Dell Hopson challenges the trial court's denial of his motion to prohibit retrial on the grounds of double jeopardy. He urges the court to interpret Washington's double jeopardy clause, Const. art. 1, § 9, to provide greater protection for defendants than its federal counterpart. The Oregon Supreme Court has enunciated a broader rule based on the provision in the Oregon State Constitution. Because the Washington provision is patterned after Oregon's provision, appellant contends it is

appropriate to adopt the Oregon rule for determining when governmental misconduct causing a mistrial bars retrial. At this time, we need not determine the parameters of Washington's double jeopardy provision. The facts of this case would not merit relief under either the federal or the Oregon analysis. Appellant also contends that during his second trial, the trial court erred by refusing to grant his motion for mistrial when a prosecutorial witness again referred to his criminal record. We disagree.

Hopson was charged by information with second degree assault and first degree arson. He conceded he set fire to Theresa Young's (a/k/a Grayson) house, but planned to offer a diminished capacity defense. Trial followed on March 11–13, and 16, 1987, before Judge Richard M. Ishikawa. A motion in limine precluded reference to Hopson's extensive criminal record. Hopson did not testify or place his criminal record in evidence. When the State called fire investigator Richard Gehlhausen to the stand, however, the following exchange took place:

Q. [Prosecutor]: Did you make any attempts to locate a suspect by the name of Mr. Hopson?

A. [Gehlhausen]: Yes, I did. I ran the suspect's name through the computer system and obtained his criminal record and history.

Report of Proceedings, at 1–172 (trial 1, p. 172). Defense counsel moved for a mistrial. The court denied the motion, finding that the statement was unfortunate but could be cured by a jury instruction. The prosecutor cautioned her witness not to refer to Hopson's criminal record, Report of Proceedings, at 1–176, 1–181; 2–14 (trial 2, p. 14), but a few moments later, the following dialogue ensued:

Q. [Prosecutor]: Describe how you saw him and where you saw him.

A. [Gehlhausen]: My partner and I were parked about 60 feet north of the residence. A vehicle drove into the driveway with two males in it. We moved our vehicle. It was a very dark and foggy night and visibility was about 50 or 60 feet. I couldn't make out who was in the vehicle

that drove into the driveway of the residence. We drove our car south of the residence so we could look on the back porch. We found there were two males who had exited the vehicle and were on the porch of 1435 22nd Avenue, and I tentatively identified Mr. Hopson from an old booking photograph.

Report of Proceedings, at 1–178. Defense counsel again moved for mistrial and the trial court granted the motion.

At the beginning of Hopson's retrial before Judge Terrence A. Carroll, the court denied defense counsel's motion to dismiss on double jeopardy grounds, but allowed him to present the motion to Judge Ishikawa or to an appellate court. While under redirect examination later in the trial, prosecution witness Josephine L. Gilliam mentioned that the defendant had been in the penitentiary.

Q. [Prosecutor]: Do you know how long Theresa's known him?

A. [Gilliam]: She said she'd known him three years before he went to the penitentiary last time.

Report of Proceedings, at 2–250. The court sustained defense counsel's objection and instructed the jury to disregard the answer.

Defense counsel then moved for a mistrial. The prosecutor argued that she had only been able to locate this witness the day of testimony because the witness was afraid of Hopson and did not want to testify. The prosecutor added that she had "burned in" to every other witness's mind that they could not refer to a criminal record in any way. The court concluded that the witness had volunteered the information and that there was not "any indication that it was suggested by the State by any question." Report of Proceedings, at 2–254. The court added that in light of the evidence needed for the planned diminished capacity defense, it would be difficult to find that the statement was unfairly prejudicial. The court denied the motion but gave the defendant the opportunity to talk to the jurors individually regarding the statement, the instruction, and whether

it would "affect their ability to be fair." Report of Proceedings, at 2–261. Defense counsel concluded that questioning would merely highlight the problem.

In a sidebar conference later in the trial, defense counsel told the court that the defense witness would testify to one of Hopson's prior criminal acts because the act showed the symbiotic relationship between the defendant and the victim. He requested a limiting instruction. Dr. John Petrich, the only witness for the defense, then testified about Hopson's diminished capacity to form the requisite intent. He stated in part:

> Now, this may seem hard to believe. . . . They got involved in some crime together, which he calls theft, back in 1981. He claims that knowing that she was on parole, that he lied about her involvement in order to get her as light a sentence as possible, and spent four years in Walla Walla Penitentiary, which is our maximum security institution over here in Walla Walla, from '82 through June of '86. So he just got released a little less than nine months ago.

Report of Proceedings, at 2–368 to 2–369.

The jury found Hopson guilty of first degree arson and simple assault. Clerk's Papers, at 27, 28. Defendant appealed. Division One of the Court of Appeals certified the appeal to this court pursuant to RCW 2.06.030.

This case presents two issues. First, did the trial court err by denying the defendant's motion to prohibit a retrial on double jeopardy grounds where a state fire inspector serving as a witness referred twice to defendant's criminal record? Second, in the second trial, did the trial court err by denying the defendant's motion for a mistrial based on a prosecution witness's reference to the defendant's time in the penitentiary where the defense witness also discussed incarceration?

I

Appellant bases his argument in favor of the Oregon rule, in part, on the constitutional history of article 1, section 9 of the Washington Constitution (hereinafter section 9). The history demonstrates that section 9 was patterned after article 1, section 12 of the Oregon State Constitution and

that the language of the two provisions is very similar. *Journal of the Washington State Constitutional Convention, 1889* (B. Rosenow ed. 1962). In the alternative, appellant asserts that the facts of this case would also bar retrial under the federal standard.

To resolve a case with finality, where arguments are based on parallel provisions of federal and state constitutions, the state issue must be addressed first. *State v. Coe,* 101 Wn.2d 364, 373, 679 P.2d 353 (1984); *State v. Wethered,* 110 Wn.2d 466, 471, 755 P.2d 797 (1988). The history of *State v. Kennedy,* 295 Or. 260, 666 P.2d 1316, 1324 (1983) (*Kennedy* II), demonstrates the advantage of applying state constitutional standards before turning to their federal counterparts. The trial court had found no bar to retrial. After the Court of Appeals reversed on federal grounds, the Oregon Supreme Court denied review. The United States Supreme Court accepted review on a writ of certiorari to the Oregon Court of Appeals. Finding no federal bar to retrial, the United States Supreme Court reversed and remanded, pointing out that the Oregon courts were free to determine that the Oregon Constitution grants broader protection. *Oregon v. Kennedy,* 456 U.S. 667, 680, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982) (*Kennedy* I) (Brennan, J., concurring). On remand, the Court of Appeals affirmed the conviction on state grounds, assuming the state and federal protections were the same. On review, the Oregon Supreme Court first determined that the Oregon Constitution provided broader protection and then found that even under that standard, the facts of the case did not bar retrial. *Kennedy* II, at 262.

■ Nonetheless, to fully understand the Oregon rule, it is necessary to explain the federal standard. Under the federal standard, a defendant's motion for mistrial removes any double jeopardy bar to retrial unless the governmental misconduct "is intended to 'goad' the defendant into moving for a mistrial". *Kennedy* I, at 676. The Court focused on judicial or prosecutorial *intent,* which may be inferred from objective facts. *Kennedy* I, at 675. Acknowledging

that previous case law implied that overreaching or harassment *not* specifically intended to cause a mistrial might bar retrial, *Kennedy* I, at 674, 679, the Court rejected that formulation of the rule for two reasons. First, there are "virtually no standards" for defining overreaching or harassment absent intent to cause mistrial. *Kennedy* I, at 674. Second, the broader standard might not help defendants as a class because a presiding judge might be more loath to grant a mistrial. *Kennedy* I, at 676.

Justice Stevens, joined by Justices Brennan, Marshall, and Blackmun, concurring in the judgment, would have found that conduct not specifically intended to provoke mistrial bars retrial in certain circumstances. He differed with the majority for two reasons. First, the majority's formulation places too heavy a burden of proof on the defendant. "It is almost inconceivable that a defendant could prove that the prosecutor's deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant." (Footnote omitted.) *Kennedy* I, at 688 (Stevens, J., concurring). Second, prosecutorial conduct should bar retrial despite lack of intent to cause a mistrial in the following circumstances: where the prosecutor seeks to cause the defendant embarrassment or the expense or ordeal of trial; and where the prosecutor "seeks to inject enough unfair prejudice into the trial to ensure a conviction but not so much as to cause a reversal of that conviction." *Kennedy* I, at 689 (Stevens, J., concurring).

According to Justice Stevens, only in a "rare and compelling case" would prosecutorial misconduct bar a retrial even under this broader standard. Normally, the Court would still have to find both "deliberate misconduct" and "that the prosecutorial error virtually eliminated, or at least substantially reduced, the probability of acquittal in a proceeding that was going badly for the government." *Kennedy* I, at 690 (Stevens, J., concurring).

In considering *Kennedy* on remand, the Oregon Supreme Court announced the Oregon rule:

[A] retrial is barred by article I, section 12, of the Oregon Constitution when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal. . . .

*Kennedy* II, at 276. The Oregon court emphasized that the difference between the federal and Oregon double jeopardy standards is "actually quite narrow":

The sole issue is whether, as four Justices maintained, there is room for a double jeopardy bar beyond the case of an intentionally provoked mistrial when a prosecutor "harasses" the defendant with what the prosecutor knows to be prejudicial error.

. . . [A] guarantee against "harassment" implies a requirement of some conscious choice of prejudicial action before the guarantee bars correction of the error by a new trial. Negligent error, "gross" or otherwise, is not enough.

*Kennedy* II, at 272–73. This is not a "should have known" standard. "[T]he court must find whether the official in fact had that knowledge. Incompetence, thoughtlessness, or excitability of the state's officers may lead to a mistrial, but it does not reflect a willingness to risk placing the defendant repeatedly in jeopardy for the same offense." *Kennedy* II, at 277.

The prosecutorial misconduct in *Kennedy* did not bar retrial under either the Oregon or the federal standard. There, on redirect the prosecutor asked a state witness "whether the reason he had never done business with defendant was 'because he was a crook.'" *Kennedy* II, at 277. Both courts noted that the judge who ruled on the motion to dismiss the retrial found the question improper but found no bad faith, intentional impropriety, or gross negligence. *Kennedy* II, at 277; *Kennedy* I, at 680 (Powell, J., concurring).

Appellant argues at length that it was the conduct of the State's witness, Mr. Gehlhausen, the fire investigator, that should bar retrial. As authority for applying the rule to the conduct of a fire inspector, appellant cites *Kennedy* II and *State v. Rathbun,* 287 Or. 421, 600 P.2d 392 (1979). In

*Kennedy* II, the Oregon Supreme Court referred to "state officers" and stated that "prosecutors are not the only officials whose conduct may cause a mistrial or a reversal." 295 Or. at 275. The court then discussed its decision in *Rathbun.*

In *Rathbun,* the court found that the conduct of a bailiff, an *officer of the court* charged with statutory duty to refrain from influencing the jury, could cause a double jeopardy bar. "The state put this officer of the court in the position to wreak havoc and must bear the same burden as when its prosecutor or judge in like manner offends." *Rathbun,* at 433. The bailiff repeatedly talked to jurors about the "sentencing habits of the trial judge where a gun is involved, the range of sentences for robbery and the knowledge of the criminal element of society to be realized by riding in a patrol car with an officer." *Rathbun,* at 424. Another circuit judge, after independently interrogating the jurors and reviewing the stipulated facts, concluded that the bailiff's conduct was not mere negligence. Rather, it "was motivated by 'bad faith or prejudice' against the defendant." *Rathbun,* at 424. Her intent was "to assist the state in securing a conviction." *Rathbun,* at 432. Under Oregon statutes and "the American Bar Association Standards Relating to the Function of the Trial Judge (1972), Standard 2.4: 'The trial judge has the *duty* to have the courtroom personnel properly instructed in the performance of their duties, * * *.'" *Rathbun,* at 433 n.7.[1]

---

[1]The language of Or. Rev. Stat. § 17.305, which regulates the bailiff's relationship with the jury, and of the following statute persuaded the Oregon court that a bailiff is an officer of the court:

"Where a duty is imposed by law upon a court, or upon a judicial officer, clerk, bailiff, sheriff, constable or other officer, which requires or prohibits the performance of an act or series of acts in matters relating to the administration of justice in a court, it is the duty of the judicial officer or officers of the court, and each of them, to require the officer upon whom the duty is imposed to perform or refrain from performing the act or series of acts."

*Rathbun,* at 427, quoting Or. Rev. Stat. § 1.025(1). Washington statutes contain no comparable section. It is clear, however, from former RCW 2.36.140 and RCW 2.32.330 that a bailiff would be an officer of the court. It is not clear that a constable or inspector serving as a witness would be an officer of the court under

■ Appellant would have this court extend the Oregon application in two respects. First, he would have the double jeopardy bar apply to a state fire inspector who is a witness, not an officer of the court. Thus, he would extend the category of state officials subject to the rule beyond that clearly delineated in either *Rathbun* or *Kennedy* II. Applying the rule to a court official such as a bailiff, whose job involves contact with juries on a daily basis, is far different from applying it to a state fire inspector. Second, he would apply it to misconduct that the trial court found, on the face of it, insufficient to bar retrial. Report of Proceedings, at 2–16. The trial court did not state that the misconduct was intentional.

Under the Oregon analysis, neither inadvertent actions nor conscious actions that were not designed to prejudice the defendant bar retrial. *See, e.g., State v. Williams*, 48 Or. App. 319, 617 P.2d 629 (1980) (bailiff's inadvertent action in leaving jury room door open so that jurors saw defendant in handcuffs did not bar retrial); *State v. Oliver*, 57 Or. App. 567, 646 P.2d 107 (1982) (prosecutor's discussion of identification procedure with officer in the presence of witnesses, even though the court had ordered witnesses excluded, did not bar retrial). The inadvertent testimony of a witness, even if the witness were grossly negligent, would not give rise to the level of misconduct required for a bar.

Furthermore, colloquy reveals that this was only the third time the fire inspector had testified in front of a jury, Report of Proceedings, at 2–14, whereas the bailiff in *Rathbun* "was experienced and had had charge of juries on numerous criminal cases . . ." *Rathbun*, at 424. It is likely that the inspector's statement about identifying the defendant from a booking photograph was merely due to excitability, negligence, or nervousness that would not meet

---

either the Oregon or Washington statutes. RCW 1.16.065 defines "officer" in a general way as "any person authorized by law to discharge the duties of such officer."

the Oregon standard to bar retrial even if the bar applied to witnesses.

Appellant makes no real argument that the federal bar should apply. He merely states in a footnote that the *prosecutor* intended to goad the defendant into requesting a mistrial. The trial court stated that the inspector's first remarks about the defendant's criminal history were "unfortunate" but did not state that they were intentional. Report of Proceedings, at 1–175. The second statement, where the inspector recognized the defendant from a booking photograph, ended a lengthy answer in response to the following question: "Describe how you saw him and where you saw him." The prosecutor did not ask the inspector to state how he identified the defendant. There is no indication that the prosecutor intended to elicit such information.

Defendant cites no cases that would support applying the federal bar. Other jurisdictions have refused to apply the bar in similar circumstances. *See, e.g., State v. Maddox,* 185 Ga. App. 674, 365 S.E.2d 516 (1988) (police officer's testimony in drunk driving trial was not attributable to prosecutorial misconduct where prosecutor did not actively aid or encourage the officer but rather had specifically instructed him not to refer to defendant's prior convictions); *State v. Fuller,* 374 N.W.2d 722 (Minn. 1985) (the Minnesota Supreme Court reversed a Court of Appeals decision where the lower court had barred retrial based on a prosecutorial duty to properly instruct witnesses); *see also State v. Butler,* 528 So. 2d 1344 (Fla. Dist. Ct. App. 1988) (prosecutor's failure to warn a state detective serving as a witness not to mention a stolen car did not bar retrial).

Prosecutorial conduct in this case does not bar retrial under either the Oregon or the federal analysis. We emphasize the narrow difference between the two standards. Both standards require a "rare and compelling" set of facts. We will not unnecessarily decide the scope of constitutional provisions. When a set of facts that would require different results under the Oregon and federal analyses is before the court, we will determine the scope of

section 9. *See State v. Fuller, supra* at 727 (Minnesota Supreme Court following the same approach); *State v. Schroepfer,* 416 N.W.2d 491 (Minn. Ct. App. 1987).

## II

██ Appellant contends the trial court erred during his second trial by denying his motion for mistrial. This court applies the abuse of discretion standard in reviewing a trial court's denial of a motion for mistrial. *State v. Mak,* 105 Wn.2d 692, 701, 719, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986); *State v. Gilcrist,* 91 Wn.2d 603, 613, 590 P.2d 809 (1979). An appellate court finds abuse only "when no reasonable judge would have reached the same conclusion." *Sofie v. Fibreboard Corp.,* 112 Wn.2d 636, 667, 771 P.2d 711 (1989).

> The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial.

*Mak,* at 701. In determining the effect of an irregularity, we examine (1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it. *See Mak,* at 701; *State v. Weber,* 99 Wn.2d 158, 165–66, 659 P.2d 1102 (1983).

The "irregularity" in this case is the witness's statement that the victim had known the defendant "three years before he went to the penitentiary the last time." Report of Proceedings, at 2–250. The trial court concluded that the statement was "not of such significance as to affect the fair trial . . ." Report of Proceedings, at 2–261. He stated, "I just don't think it's earth–shaking." Report of Proceedings, at 2–256. We have noted that a "trial judge is best suited to judge the prejudice of a statement . . ." *Weber,* at 166; *see also State v. Mak, supra* at 719.

██ Appellant contends, however, that evidence of his criminal record is inherently prejudicial and cannot be cured by a jury instruction. We have held that in certain situations curative instructions cannot remove the prejudicial effect of evidence of other crimes. *See State v. Mack,*

80 Wn.2d 19, 490 P.2d 1303 (1971); *State v. Miles,* 73
Wn.2d 67, 71, 436 P.2d 198 (1968). Nonetheless in the context of a given case, evidence of other crimes may not affect
the outcome of the trial. In such situations, the trial court
may properly deny a defendant's motion for mistrial. The
Court of Appeals has recognized this principle in *State v.
Downs,* 11 Wn. App. 572, 575, 523 P.2d 1196 (1974). *See
also State v. Beel,* 32 Wn. App. 437, 442, 648 P.2d 443
(1982) (applying same principles to evidence of specific acts
of misconduct under ER 404(a)).

Cases involving erroneously *admitted* evidence of unrelated crimes provide example by analogy. *See Mack,* at 22
("We do not hold, however, that erroneously admitted evidence of other crimes is *always* prejudicial"). Error in
admitting evidence does not require reversal if it meets the
harmless error standard. If the error is not of constitutional
magnitude, it is harmless unless, "'within reasonable probabilities,'" the error materially affected the outcome of the
trial. *State v. Smith,* 106 Wn.2d 772, 780, 725 P.2d 951
(1986). The stricter standard for constitutional error
requires that it be harmless beyond a reasonable doubt.
*State v. Jones,* 101 Wn.2d 113, 125, 677 P.2d 131 (1984).[2]

In *Jones,* the defendant testified on direct concerning
one prior felony conviction. On cross, the prosecutor elicited testimony about the details of two prior felony convictions. The trial court erroneously admitted the testimony.
Applying the strict standard for constitutional error, the
court found the error harmless: the prior convictions bore
no similarity to the crime charged; the number of convictions was not exceedingly large; and "the jury had overwhelming evidence from which to convict" the defendant.
*Jones,* at 125.

---

[2]The *Jones* court's application of the constitutional standard of harmless
error for errors under ER 609(a) has been called into doubt by *State v. Brown,*
111 Wn.2d 124, 761 P.2d 588 (1988), *reh'g granted* (Jan. 27, 1989) [On rehearing,
previous decision adhered to at 113 Wn.2d 521, 782 P.2d 1013, 787 P.2d 906
(1989).]. The resolution of that issue does not affect the analysis of the present
case.

Applying similar logic in the present case, we find the irregularity was not serious enough to materially affect the outcome of the trial. There was no information concerning the nature or number of prior convictions, and the jury had overwhelming evidence favoring conviction. The defendant conceded that he set fire to the house. The only defense was diminished capacity.

At this point, analysis of the first and second factors, the seriousness of the evidence and its cumulative nature, overlaps. Defense counsel had not introduced evidence of the defendant's criminal record at the time the statement was made. Therefore, the evidence was not cumulative at that time. However, the witness's remark did not change defense strategy. It was agreed in advance that evidence of the defendant's criminal history would be inadmissible *except* for that contained in Dr. Petrich's testimony. Brief of Appellant, at 29. Dr. Petrich was the only witness for the defense.

Furthermore, the trial judge knew and was concerned about the extent to which Dr. Petrich relied upon information about defendant's criminal history in developing his opinion about diminished capacity. Report of Proceedings, at 2–257 to 2–258, 2–296 to 2–341 (colloquy). Dr. Petrich told the judge, while the jury was not present, that he would testify about defendant's incarceration in 1980–81 because it demonstrated the symbiotic relationship between the defendant and the victim.[3] Dr. Petrich then testified, stating that the defendant and Theresa were accused of a crime. As the result of covering for Theresa, the defendant was incarcerated in a state penitentiary from 1982–1986. Report of Proceedings, at 2–368 to 2–369. In this factual

---

[3]Defendant and victim had apparently been living together just prior to defendant's setting the victim's house on fire. Allegedly, she was pregnant with his child. The doctor based his testimony to a large extent on defendant's emotional involvement with the victim.

context, timing is insignificant. *See Mak,* at 720 (considering a similar chronology and finding no prejudice).

The third factor presents no problem. The judge ordered the jury to disregard the remark and minimized its impact by moving the trial along. He refused to discuss the remark with counsel in front of the jury. Jurors are presumed to follow instructions. *Mak,* at 702.

In sum, we do not find abuse of discretion. Accordingly, we affirm the trial court's denial of both motions.

CALLOW, C.J., and DOLLIVER, DORE, PEARSON, and SMITH, JJ., concur.

DURHAM, J. (concurring)—I concur in the decision of the majority. I agree that appellant's right, guaranteed by the Washington Constitution to not be twice put in jeopardy for the same offense, was not violated in this case. I also agree that we need not decide in this case if the Washington Constitution provides more protection from double jeopardy than does the United States Constitution.

Like most states, Washington throughout its history has had a constitutional ban against placing anyone twice in jeopardy for the same offense. Unlike Oregon, whose constitutional guaranty has in the past been given independent interpretation with results that might not correspond with those in other states or in federal law, *State v. Kennedy,* 295 Or. 260, 666 P.2d 1316 (1983), the question of whether our state constitution provides more protection from double jeopardy than does the federal constitution remains open. I feel compelled to emphasize that we do not decide that question in this case. Thus, the majority's lengthy discussion of the Oregon analysis as it compares to the federal analysis is dicta. To the extent that the majority implies that this court will adopt the Oregon analysis at its next opportunity, I hasten to point out that this implication

arises from dicta which is not to be relied upon as precedent for future cases.

BRACHTENBACH and ANDERSEN, JJ., concur with DURHAM, J.