

FILED
COURT OF APPEALS
DIVISION II

2014 JUN 24 AM 9:03

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43786-4-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| GARY ALLEN LOHR, | |
| Appellant. | |

BJORGEN, J. — A jury returned verdicts finding Gary Allen Lohr guilty of unlawful

possession of a controlled substance (methamphetamine) and bail jumping. Lohr appeals his

convictions, asserting that the trial court violated his right to a fair trial by refusing to grant a

mistrial after the State questioned Lohr about certain facts underlying his previous conviction for

unlawful possession of methamphetamine. We affirm.

## FACTS

On the evening of December 9, 2011, Centralia police officers Adam Haggerty and Mary

Humphrey arrested Lohr for driving while his license was suspended. Humphrey searched Lohr

incident to his arrest and found a small plastic bag containing methamphetamine[1] in Lohr's front

jacket pocket. Humphrey also found paperwork with Lohr's name on it in the same jacket

pocket where she had found the methamphetamine.

_____

[1] The parties stipulated at trial that the bag found in Lohr's jacket pocket contained
methamphetamine.

On December 12, 2011, the State charged Lohr with one count of unlawful possession of a controlled substance. On April 5, 2012, the State amended its charges to add a count of bail jumping, alleging that Lohr had failed to appear at a scheduled court hearing.

Before trial, the State filed a motion requesting that the trial court allow it to present evidence of facts underlying Lohr's prior convictions for unlawful possession of methamphetamine. The trial court denied the State's motion, stating:

> [The] [f]irst motion the State filed was to allow the State to admit evidence regarding defendant's prior use and possession of methamphetamine in response to the claim of unwitting possession. That motion is denied. . . . Depending on the defense case, depending on what testimony is given, that door might be opened, but unless and until it is that is not going to be allowed.

Report of Proceedings (RP) at 12.

At trial, Lohr testified that he used to work as a certified drug and alcohol counselor, has had several "run-ins with the law," and was "familiar with the meth community in Lewis County." RP at 157, 160, 163. Lohr further testified that he often allowed individuals that needed help with their drug addiction issues to stay at his home. Lohr stated that after his daughter passed away in 2008 or 2009, he "f[e]ll off the wagon" and started using marijuana, alcohol, and prescription medications, but that he did not use "illegal drugs." RP at 163-64. Lohr expressed that he continued to have substance abuse issues until he was arrested on January 9, 2009, after which he pleaded guilty to second degree theft and unlawful possession of a controlled substance. Lohr stated that after he was released from incarceration following his guilty plea convictions, he discovered that people had inhabited his home, had caused extensive damage to his home, and had left behind piles of junk, clothing, and drug paraphernalia.

2

Lohr testified that he and some of his friends were cleaning his home on December 9, 2011, when Clarence Robbins arrived to give him a ride to pick up Lohr's Blazer. Lohr said that as he was leaving his house, Billie Orr handed him a jacket. Lohr testified that he put his social security paperwork in a pocket of the jacket that Orr had handed to him. Lohr stated that he was stunned when Humphrey found methamphetamine in his jacket later that evening. On cross-examination, the following exchange took place:

> [State]: All right. You told counsel about a 2009 incident where you got in some trouble when a warrant was being served at your house; is that right?
>
> [Lohr]: A search warrant, yes.
>
> [State]: All right. And your testimony was that you personally were only using prescriptions and marijuana, things that you deemed to be not illegal at that time; is that right?
>
> [Lohr]: Yeah. That's what I was using.
>
> [State]: But then you told counsel that you did get in some trouble for a methamphetamine issue out of that case; isn't that right?
>
> [Lohr]: There w[ere] methamphetamines there. I wasn't using methamphetamines.
>
> [State]: Now, Mr. Lohr, I want you to be very clear about this. That incident that got you in trouble, where was that methamphetamine, according to you?
>
> [Lohr]: I don't know. I don't know where it was found. It was found in my house.
>
> [State]: Now, isn't it true, Mr. Lohr, that in fact that methamphetamine was found by law enforcement inside of a wallet in a jacket pocket of yours; isn't that correct?
>
> [Lohr]: I don't recall.

RP at 230. Defense counsel objected, and the trial court excused the jury from the courtroom. Defense counsel then moved for a mistrial, asserting that the State committed misconduct by eliciting testimony in violation of the trial court's ruling in limine. The trial court sustained defense counsel's objection, but denied the motion for a mistrial. When the jury returned to the courtroom, the trial court stated, "When we broke for lunch, Mr. Lohr was on the stand and there was some discussion going on about the 2009 methamphetamine case. You are to disregard any

questions or any testimony regarding the alleged facts of the prior methamphetamine case." RP at 252. The jury found Lohr guilty of unlawful possession of a controlled substance and bail jumping. Lohr appeals his convictions.

## ANALYSIS

Lohr contends that the trial court violated his right to a fair trial and abused its discretion by denying his motion for a mistrial after the State questioned him about officers finding methamphetamine in his jacket pocket during a 2009 arrest, which arrest led to his previous conviction for unlawful possession of a controlled substance. We disagree and affirm Lohr's convictions.

A trial court should grant a motion for a mistrial "'only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.'" *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)). We review a trial court's denial of a mistrial for an abuse of discretion and will only find such abuse "'when no reasonable judge would have reached the same conclusion.'" *Hopson*, 113 Wn.2d at 284 (quoting *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667, 771 P.2d 711 (1989)). Additionally, we will overturn a trial court's denial of a mistrial motion only when there is a substantial likelihood that the error underlying the mistrial motion affected the jury's verdict. *State v. Rodriquez*, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002). In determining the effect of an irregular occurrence during trial, we examine (1) its seriousness, (2) whether it involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard it. *Johnson*, 124 Wn.2d at 76. We "[c]onsider[] these factors with deference to the trial court." *State v. Perez-Valdez*, 172 Wn.2d 808, 818, 265 P.3d 853 (2011).

Here, assuming that it was improper for the State to question Lohr about police finding methamphetamine in his jacket pocket during the 2009 arrest,[2] any impropriety was mitigated by the cumulative evidence of Lohr's other acts and by the trial court's curative instruction to the jury to disregard the State's question. Prior to the State's improper question to Lohr, Lohr had already testified to having drug addiction issues, several "run-ins with the law," and associations with the Lewis County "meth community." RP at 160, 163. Additionally, Lohr had already testified as to his 2009 arrest, admitted that the 2009 arrest led to a conviction for unlawful possession of a controlled substance, and admitted police found methamphetamines in his home during the 2009 arrest. The only new information implied by the State's improper question to Lohr was that the methamphetamines found in Lohr's home were located in a wallet in his jacket pocket.

While the implication of the State's question to Lohr undermined his unwitting possession defense, given the cumulative evidence described above we cannot say it so prejudiced Lohr such "'that nothing short of a new trial c[ould have] insure[d] that [he was] tried fairly.'" *Johnson*, 124 Wn.2d at 76 (quoting *Hobson*, 113 Wn.2d at 284). Additionally, any prejudice resulting from the State's improper question was cured by the trial court's instruction to the jury to disregard any questions or testimony regarding the alleged facts of the prior methamphetamine case. "We presume that juries follow the instructions and consider only evidence that is properly before them." *Perez-Valdez*, 172 Wn.2d at 818-19. Accordingly, we

---

[2] The State does not cross appeal the trial court's determination that it was improper to question Lohr about methamphetamine being found in his jacket pocket during the 2009 arrest leading to his previous unlawful possession of a controlled substance conviction.

No. 43786-4-II

hold that the trial court did not abuse its discretion by denying Lohr's motion for a mistrial, and

we affirm his convictions.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Bjorgen, A.C.J.
BJORGEN, A.C.J.

We concur:

MAXA, J.

LEE, J.

6