2014 NOV 17 AM 9:40



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70149-5-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| JOHNATHAN RAY AKRE, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: November 17, 2014 |
|  | ) |  |

COX, J. – A reference to a polygraph test "is not necessarily prejudicial if no inference as to the result is raised or if an inference to the result is not prejudicial."[1] To determine whether a trial irregularity affected the outcome of a trial, this court examines three factors: "(1) [the irregularity's] seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it."[2] Because the trial court did not abuse its discretion in reconsidering its initial decision to grant the motion for mistrial, we affirm.

The State charged Johnathan Akre with second degree assault of a child against M.S., his stepdaughter. M.S., who is developmentally delayed, was seven years old at the time of the incident, and had a limited ability to

---

[1] State v. Terrovona, 105 Wn.2d 632, 652, 716 P.2d 295 (1986).

[2] State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

communicate. M.S. sustained lacerations to her vagina, which eventually required emergency room surgery.

Akre initially denied that he had any role in injuring his stepdaughter. He told his wife that he had found his two stepdaughters "playing doctor" and that M.S. was bleeding when he found her. Akre and his wife repeated this version of events to various doctors, school officials, and CPS workers.

When a police detective interviewed Akre, he maintained his version of events. Akre later agreed to take a polygraph test. The test results indicated deception. Akre then changed his story, stating that he caught M.S. inserting a toy brush into her vagina. He said that when he picked her up, he accidently kicked the brush into her vagina. He later admitted to kicking the brush out of anger.

Before trial, Akre moved in limine to exclude evidence that he took a polygraph test. The court granted the motion.

At trial, a social worker from Child Protective Services (CPS) testified. During her testimony, she mentioned that "a polygraph had been scheduled." Akre promptly objected to this testimony and moved for a mistrial. The trial court initially granted the motion. But on reconsideration, the court denied the motion and gave the jury a curative instruction. The jury found Akre guilty.

Akre appeals.

## MISTRIAL MOTION

Akre argues that the trial court abused its discretion in reconsidering its initial grant of the motion for a mistrial. Specifically, Akre argues that the

2

witness's reference to a polygraph test created prejudice that the court's later instruction following reconsideration could not cure. We disagree.

"The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried."[3] This court reviews a denial of a mistrial for abuse of discretion.[4] This court also reviews reconsideration of the grant of a motion for abuse of discretion.[5]

"A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[6] When the alleged mistrial is based on a trial irregularity, this court examines three factors: "(1) [the irregularity's] seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it."[7] These factors "guide determination of the ultimate question in the review of the denial of a mistrial motion: whether there is a substantial likelihood that the error affected the jury's verdict."[8]

---

[3] Id.

[4] Id.

[5] Drake v. Smersh, 122 Wn. App. 147, 151, 89 P.3d 726 (2004).

[6] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[7] Emery, 174 Wn.2d at 765 (quoting Hopson, 113 Wn.2d at 284).

[8] State v. Garcia, 177 Wn. App. 769, 783, 313 P.3d 422 (2013), review denied, 179 Wn.2d 1026 (2014).

This court presumes that juries follow courts' instructions.[9]

"It is a long-standing rule in Washington that the results of polygraph examinations are not admissible, except by stipulation."[10] Merely referencing a polygraph test can create reversible error in some circumstances.[11] But referring to a polygraph test "is not necessarily prejudicial if no inference as to the result is raised or if an inference to the result is not prejudicial."[12]

Reference to a polygraph test is prejudicial if it establishes that one party's version of events is true or false.[13] For example, when the State's main witness had been the police's prime suspect until he took a polygraph test, referring to a polygraph test created prejudice even without disclosing the results of the test.[14] Referring to the test allowed the jury to infer that the witness had passed the test, and thus was telling the truth.[15]

The State called Megan McGuire, a social worker employed by DSHS, as a witness. During direct examination, the State asked her about Child Protective

---

[9] State v. Perez-Valdez, 172 Wn.2d 808, 818-19, 265 P.3d 853 (2011).

[10] State v. Sutherland, 94 Wn.2d 527, 529, 617 P.2d 1010 (1980).

[11] Id. at 530-31; State v. Descoteaux, 94 Wn.2d 31, 39, 614 P.2d 179 (1980), overruled on other grounds by State v. Danforth, 97 Wn.2d 255, 643 P.2d 882 (1982).

[12] Terrovona, 105 Wn.2d at 652.

[13] State v. Justesen, 121 Wn. App. 83, 95, 86 P.3d 1259 (2004).

[14] Sutherland, 94 Wn.2d at 530.

[15] Id. at 531.

Services' decision to remove Akre's infant daughter from his home. The following exchange occurred:

A. Yes. I signed the petition [to remove Akre's infant daughter] on the 5th of March, and it was signed later that afternoon.

Q. And when -- was the [infant] child then picked up on the 5th, or did that happen later?

A. The next day.

Q. Do you know approximately when?

A. Sometime in the morning. Eight. It was early morning.

Q. And did you have contact with Detective Gillebo about that process?

A. Yes.

Q. And what was the reason for contacting him?

A. I contacted him because of a polygraph had been scheduled.

[Defense Counsel]: Objection, Your Honor. I have a motion.

THE COURT: Yes. Let's have the jury take a brief recess.

(Jury out.)[16]

Out of the presence of the jury, the trial court expressed concern that the witness mentioning the scheduled polygraph could have "rung the bell" in the minds of the jury and prejudiced Akre. After hearing additional argument by counsel and taking a recess to consider the matter further, the court initially granted the motion for mistrial.

---

[16] Report of Proceedings (Mar. 11, 2013) at 665-66.

But, on reconsideration, the court decided to deny the motion and instructed the jury to address the irregularity of the witness's reference to a scheduled polygraph. Thus, the question we decide is whether the trial court abused its discretion in reconsidering its initial decision and ultimately denying the mistrial motion.

We conclude that the trial court did not abuse its discretion. The reference by the witness to a scheduled polygraph was a trial irregularity, contrary to the court's grant of the motion in limine. Akre does not contest the trial court's characterization of the reference as inadvertent.

The first factor courts consider when analyzing a trial irregularity is the seriousness of the irregularity.[17] In this case, Akre argues that the irregularity was serious. The State disagrees, arguing the error was not so serious that it justified granting a new trial. We agree with the State.

The witness did not say who was scheduled to take the polygraph test, whether the test actually occurred, or what any test results were. Moreover, the reference was brief, the objection to it was prompt, and no further testimony on the point was allowed.

Additionally, in this case the jury had other evidence indicating that Akre had changed his story—both versions of his statement were admitted into evidence. Akre initially told the police that his stepdaughter was already injured when he found her. In his second statement, he admitted that he kicked the toy

---

[17] Hopson, 113 Wn.2d at 284.

brush when he found his stepdaughter. Thus, there was evidence in the record on which the jury could have found that Akre's first story was untrue.

Significantly, during closing argument, counsel for Akre acknowledged that the first story, that Akre had discovered his stepdaughter bleeding, was a "lie." His attorney attempted to justify the falsehood to the jury.

Thus, for these reasons, the brief reference to a scheduled polygraph was not sufficiently serious for purposes of the first element of the governing test.

The second factor in an analysis of a trial irregularity is whether the evidence involved is cumulative.[18] In this case, the evidence was not cumulative, and the State does not contend otherwise. The witness's testimony was the only mention of the polygraph. But the court balances the three factors of the test— the fact that the evidence was not cumulative is not determinative.[19]

The third factor courts consider is whether the trial court instructed the jury to disregard the irregularity.[20] The trial court did so here.

The court properly instructed the jury to disregard the irregularity. It instructed the jury "to disregard the last answers made by [the witness] to questions asked of her when we last left. Her final answers are to be disregarded and you're to take no note of it."[21]

---

[18] Emery, 174 Wn.2d at 765 (quoting Hopson, 113 Wn.2d at 284).

[19] See Garcia, 177 Wn. App. at 783-85.

[20] Id. (quoting Hopson, 113 Wn.2d at 284).

[21] Report of Proceedings (Mar. 12, 2013) at 710.

We presume that juries follow a trial court's curative instructions.[22] There is nothing in this record to suggest that this jury did otherwise.

Akre argues that this case is analogous to State v. Sutherland. In that case, the jury learned that the State's witness had taken a polygraph test.[23] Although the jury never heard the results of the test, referring to the test allowed the jury to infer that the witness had passed the test and was telling the truth.[24]

The present case is distinguishable. In Sutherland, the prejudice resulted from the fact that the results of the polygraph indicated that the witness's testimony was true.[25] Here, the polygraph did not go to the truth or falsity of Akre's defense. As explained earlier, Akre did not rely on the truth of his initial statement. During closing argument, counsel for Akre acknowledged that Akre's first story was false. Thus, the implied result of the polygraph did not directly contradict Akre's defense. Accordingly, an inference that a polygraph test proved that Akre's first story was false does not create as much prejudice as the inference in Sutherland.

Akre also argues that the reference to the polygraph was prejudicial because it allowed the jury to infer that he "was a scientifically proven liar." But in this case, there was evidence in the record that Akre gave two conflicting statements to the police. And during closing argument, his attorney

---

[22] Perez-Valdez, 172 Wn.2d at 818-19.

[23] Sutherland, 94 Wn.2d at 528-30.

[24] Id. at 531.

[25] Id. at 530.

acknowledged that Akre initially told a false story. Thus, Akre's argument is unpersuasive.

Akre also argues that the court's curative instruction was not specific enough to be effective. At trial, Akre did not make this argument, but instead argued that no curative instruction could be effective.

Here, the court instructed the jury to disregard the witness's last answers, which included the reference to the polygraph. Akre argues that this instruction allowed the jurors to disregard *any* of the witness's last answers, not necessarily the reference to the polygraph test. But the court actually instructed the jury to disregard *all* of the witness's last answers, which necessarily includes the reference to the polygraph, as that was the witness's final answer. Accordingly, Akre's argument is unpersuasive.

In sum, the trial irregularity was not sufficiently serious to warrant relief. While the evidence of the scheduling of a polygraph was not cumulative, this is only one factor for the court to consider. Finally, the court properly instructed the jury. Accordingly, the trial court did not abuse its discretion by reconsidering its initial decision and ultimately denying the motion for a mistrial.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Spearman, C.J._        _Dwyer, J._

9