IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36074-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| HECTOR CARRASCO RAMOS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Hector Ramos appeals his conviction for possession of a controlled substance because of the prosecuting attorney's violation of an order in limine. Because Ramos fails to establish prejudice resulting from the violation, we affirm his conviction. We remand, however, to the sentencing court to strike a DNA collection fee imposed on Ramos.

## FACTS

The Department of Corrections (DOC) issued an arrest warrant for Hector Ramos. Despite the DOC issuing the warrant, Ramos's stepfather called the Yakima Police Department to advise that Ramos came to his residence and caused problems the night before. The stepfather advised police dispatch that Ramos wore a black jacket, black pants, black hat, and held a blue cooler.

Later that day, Yakima Police Officer Kimberly Hipner, while patrolling city streets, spotted someone walking who met Ramos's description. Hipner activated her police car video camera and followed Ramos in her patrol car while she waited for assistance. Ramos trudged slowly down an alley. He did not appear to notice the presence of the patrol car.

The video camera inside Officer Kimberly Hipner's patrol car recorded the car following Ramos down the alleyway until she parked the patrol car with the camera facing bushes. The camera plants on the bushes for the rest of the video, while the viewer hears audio of the ensuing struggle.

When Kimberly Hipner saw another officer approaching, she exited her patrol car, twice told Ramos to lay on the ground, and thrice excitedly ordered him to show his hands. Ramos set his blue cooler down. Officer Hipner grabbed Hector Ramos's backpack with her hand. Officer Einar Agledal, who had arrived to assist, saw Ramos tumble to the ground on his own initiative when Hipner gripped the backpack. Ramos states the officer unexpectedly threw him to the ground.

Officer Kimberly Hipner informed Hector Ramos of the arrest warrant. Hipner saw Ramos grab some unknown object, and she warned Officer Einar Agledal of Ramos's conduct. Agledal ordered Ramos to show his hands. Ramos exclaimed that he did nothing wrong. Ramos struggled with Officer Hipner. Hipner told Ramos: "You have a DOC pickup. You are under arrest." Ex. 10 at 3 min., 54 sec. Ramos protested

2

that the officers could not identify him as a suspect. Hipner insisted that the officers recognized his personage.

Officers Kimberly Hipner and Einar Agledal attempted to roll Hector Ramos onto his stomach, but Ramos resisted. The pair of officers drug Ramos away from the alley and into an open area, while Ramos continued to struggle. Ramos wiggled, squirmed, flailed, kicked, and repeatedly yelled for help.

During the scrum, Hector Ramos kicked Officer Kimberly Hipner in the leg. Hipner lost her grip on Ramos's arm. Officer Einar Agledal mounted Ramos and executed a carotid neck hold. Ramos moved his chin to his chest to resist the chokehold. Ramos tapped the ground and Agledal released some pressure. Hipner eventually cuffed Ramos. The skirmish lasted two minutes.

According to Hector Ramos, he never heard sirens or anyone identify herself or himself as a police officer. He never saw patrol car lights. He did not know it was law enforcement officers with whom he wrestled.

While waiting for medics to arrive, Officer Einar Agledal searched Hector Ramos's pockets and seized a clear bag with a white crystalline substance inside. Officer Agledal believed the white substance to be methamphetamine. Testing at the Washington State Patrol Crime Laboratory confirmed methamphetamine. According to Ramos, he did not observe the officers remove anything from his pockets.

3

PROCEDURE

The State of Washington charged Hector Ramos with third degree assault and possession of a controlled substance, methamphetamine. At a CrR 3.5 hearing, the State asked permission to show the patrol car camera recording, which contained audio of remarks from Hector Ramos. At the conclusion of the hearing, the trial court found Ramos to be in custody while he spoke to officers, but not subjected to interrogation. Therefore, the State could admit as evidence utterances from Ramos recorded on the video.

The State and Hector Ramos agreed that the State could show the jury the first eight minutes and fifteen seconds of the video. A portion of this segment included Officer Kimberly Hipner's statement to Ramos: "You have a DOC pickup. You are under arrest." Ex. 10 at 3 min., 54 sec.

At the conclusion of the CrR 3.5 hearing, the trial court also granted Hector Ramos's motion to preclude the officers from referring to the arrest warrant as a DOC warrant. Presumably Ramos wished exclusion of the title "DOC" because the reference would imply he previously spent time in prison. This ruling conflicted with the showing to the jury of the entire stipulated eight minutes and fifteen seconds of the police camera video. Nevertheless, the defense did not object to the portion of the video that referenced the DOC warrant, and the State did not seek clarification.

4

The prosecuting attorney initially assigned to Hector Ramos's case fell ill on the first day of jury selection. Another prosecutor substituted on behalf of the State. The trial court instructed replacement counsel not to mention the DOC warrant:

> THE COURT: The only thing of any import would be that the officers should reference that they were attempting to contact Mr. Ramos to arrest him on a warrant, a DOC warrant. There is an agreement there will be no mention of the nature of the warrant, just a warrant.
> [PROSECUTOR]: Fair enough, Your Honor.

2 Report of Proceedings (RP) at 59.

During opening statement, the prosecuting attorney remarked:

> On September 25th, the defendant was arrested on a Department of Corrections warrant. He had an existing warrant out from the Department of Corrections. Officer—

2 RP at 132. The trial court halted the proceedings and dismissed the jury. The prosecuting attorney stated he understood the judge's instruction to permit him to mention that the DOC issued the warrant, but not to disclose the reason for the issuance. The trial court concluded that the prosecuting attorney did not purposely violate the order in limine, but declared a mistrial at Hector Ramos's request anyway.

The second trial began two months later, with the first prosecuting attorney assigned to the prosecution representing the State. Counsel for Hector Ramos asked if the State instructed the officers about pretrial rulings.

5

THE COURT: You have done that.
[PROSECUTOR:] I did, your Honor. I went over with both officers not to mention DOC, not to talk about the earlier phone call the night before regarding a DV [domestic violence], not to talk about any trespass.
THE COURT: It's just a generic arrest warrant.
[PROSECUTOR]: Just say arrest warrant.
THE COURT: I would hate to have another mistrial.
[RAMOS COUNSEL]: I would, too.
THE COURT: I would really hate it.

3 RP at 215.

During trial testimony, Officers Kimberly Hipner and Einar Agledal described the scrimmage during Hector Ramos's arrest. Neither officer mentioned the arrest warrant as being issued by the DOC. Nevertheless, the State fatefully played the patrol car video without any extraction of audio. During the video, the jury heard Officer Hipner declare: "You have a DOC pickup. You are under arrest." Ex. 10 at 3 min., 54 sec.

Officer Einar Agledal testified he seized a bag containing a white crystalline substance from Hector Ramos in a search incident to arrest. The trial court admitted the bag of methamphetamine as an exhibit. Detective Mark Grow testified he sent the crystalline substance to the Washington State Patrol Crime Laboratory for testing. Washington State Patrol forensic analysis scientist Jennifer Allen testified the white crystalline substance returned a positive test result for methamphetamine. The trial court admitted the Washington State Patrol laboratory report as an exhibit.

The trial court instructed the jury in part:

6

Instruction No. 1

. . . .

The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses and the exhibits that I have admitted during the trial. If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict.

. . . .

The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

You may have heard objections made by the lawyers during trial. Each party has the right to object to questions asked by another lawyer, and may have a duty to do so. These objections should not influence you. Do not make any assumptions or draw any conclusions based on a lawyer's objections.

Clerk's Papers at 21-22.

In closing argument the prosecutor mentioned a DOC warrant.

[PROSECUTOR]: Let's talk about what happened with Officer Hipner. She goes to approach him. She tells him he has a DOC warrant.
[RAMOS COUNSEL]: Objection.
[PROSECUTOR]: It was in the COBAN [video played to the jury].
[RAMOS COUNSEL]: Move to strike.
THE COURT: On what basis?
[RAMOS COUNSEL]: On the court's pretrial ruling.
THE COURT: Sustained.

3 RP at 360-61. The prosecuting attorney corrected herself, continued her closing remarks, and referred to a "warrant" once more. 3 RP at 361, 364.

7

When the jury began deliberations, Hector Ramos moved for a mistrial based on the prosecuting attorney's mention of the "DOC warrant." 3 RP at 378. Ramos characterized the comment as an intentional or reckless disregard for the court's ruling. The court remarked:

> THE COURT: Well, I'm concerned about it. I don't know why you went there, to tell you the truth. It was a boneheaded move, to say the least.
> Well, I'm going to wait and see what the jury does. We'll see what happens with the jury. Whether I decide to grant a new trial or dismiss the prosecution, we'll see where we are.

3 RP at 379.

During deliberations, the jury reviewed the patrol car video. Later, the jury informed the trial court that they reached a verdict on the possession charge, but deadlocked on the assault charge. The trial court asked the jury if it could reach a verdict within a reasonable time on the assault charge. One juror expressed the possibility of a verdict. The trial court returned the jury to deliberate. After further deliberations, the jury returned and reinformed the court that it could not reach a verdict on the assault charge. The judge inquired: "Is there a reasonable probability of the jury reaching an agreement within a reasonable time as to Count 1, the charge of third degree assault?" 3 RP at 383. The jury unanimously answered in the negative.

The trial court declared a mistrial for the charge of third degree assault. The jury found Hector Ramos guilty of possession of a controlled substance, methamphetamine. The trial court then ruled on Ramos's motion for mistrial:

In any event, I would also indicate that I think your motion at this point probably is moot about the mention of the DOC warrant. It doesn't appear to me that there was any serious contest as to Count 2, the charge of possession of methamphetamine. I don't think the mention of the DOC warrant affected in any fashion the jury's verdict as to Count 2. For the record, I will deny your request.

3 RP at 386.

Hector Ramos asked the trial court to enter a finding that the State purposely violated the order in limine. In response, the prosecutor claimed she did not violate the order because the video played to the jury earlier referenced the DOC warrant. According to the prosecuting attorney, counsel does not violate an order in limine even if counsel references a precluded subject if the jury heard the precluded evidence anyway. The prosecutor emphasized that the jury instructions advised the jury that the attorney statements do not constitute evidence.

The trial court commented:

THE COURT: All right. I don't think it was inadvertent. I think it was misguided. I think, given all the hullabaloo allow about the pretrial rulings, that it was an area that the state should never have gone into. It was misguided to do so.

On the other hand, given the circumstances of this case, if there's going to be a third trial, I guess, there's going to be a third trial. Presumably at the third trial the state won't make any mention of DOC warrants. The third time is a charm in all that. We would hope that would be the case.

3 RP at 388.

9

The trial court ordered a mistrial with regard to the assault charge because of the deadlocked jury. The court recognized that the State could retry the assault charge, but commented that a third trial on the charge would likely waste judicial resources.

At sentencing, the trial court dismissed the assault charge with prejudice. The court sentenced Hector Ramos to eighteen months' confinement for possession of a controlled substance.

During sentencing, Hector Ramos told the court he was homeless and penniless. The sentencing court entered an order of indigency in connection with this appeal. The court imposed legal financial obligations consisting of a $500 crime penalty assessment and a $100 DNA collection fee.

## LAW AND ANALYSIS

Because of the dismissal of the assault charge, we only address, in this appeal, Hector Ramos's conviction for possession of a controlled substance. Ramos contends that the trial court erred when it refused to grant him a mistrial on the charge after the prosecuting attorney violated the order in limine precluding mentioning of a DOC arrest warrant. Ramos again characterizes the violation as deliberate and intentional.

A violation of an order in limine constitutes a trial irregularity and may constitute misconduct warranting a mistrial. *State v. Thompson*, 90 Wn. App. 41, 46-47, 950 P.2d 977 (1998). A trial irregularity prejudices a defendant's fair trial rights if it poses a substantial likelihood of affecting the jury's verdict. *State v. Gamble*, 168 Wn.2d 161,

177, 225 P.3d 973 (2010). To prevail on a claim of prosecutorial misconduct, Hector Ramos must establish that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997).

We review a grant or denial of a motion for mistrial for abuse of discretion. *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000). Abuse of discretion to deny a mistrial occurs when no reasonable judge would have reached the same conclusion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012); *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). The trial court sits in the best position to determine the prejudice of a violation of an order in limine. *State v. Thompson*, 90 Wn. App. at 45-46 (1998).

Hector Ramos principally relies on *State v. O'Donnell*, 191 Wash. 511, 71 P.2d 571 (1937), wherein the Supreme Court characterized the prosecutor's reference to Joseph O'Donnell's criminal record in opening statement as comprising gross misconduct. The Supreme Court reversed O'Donnell's conviction for murder. The Supreme Court reasoned that an instruction to the jury to disregard the statement could not restore the minds of the jurors to a fair and impartial state that the law requires.

Hector Ramos's prosecutor's comment of a DOC warrant informed the jury of Ramos's prior conviction of a crime. The statement could have significantly prejudiced Ramos. The rule that excludes evidence of earlier crimes of the accused helps to staunch

uncontrollable and undue prejudice and possible unjust condemnation induced by such evidence. *State v. O'Donnell*, 191 Wash. at 515.

The State highlights that the prosecuting attorney only used the phrase "DOC warrant" once during closing. The State also mentions that the jury already heard the term "DOC pickup" when viewing the patrol car video. Presumably, the State equates a "DOC pickup" with a "DOC warrant," which amounts to the jury hearing the objectionable phrase twice. Rather than the previous reference in the video excusing the prosecuting attorney's conduct, the reference compounds the error.

Prior to trial, the State should have explored the tension between Officer Kimberly Hipner's statement on the police camera recording and the trial court's order in limine. In so doing, the State could have clarified whether the inclusion of Officer Kimberly Hipner's statement should have been redacted or whether the defense believed there was a material distinction between referencing a "DOC pickup" and a "DOC warrant." The defense also could have sought clarification or redaction of the portion of the video. In the end, the State was responsible for exploring how it could explain the circumstances of Officer Kimberly Hipner's contact with Hector Ramos without violating the trial court's clear and repeated order.

Because of the conduct of the prosecuting attorney, we would reverse the conviction under other circumstances. Because of two unique factors, however, we affirm the trial court's refusal to grant a mistrial. First, the evidence of Hector Ramos's

possession of methamphetamine was overwhelming, if not undisputed. The white clear "baggie" was discovered in Ramos's pocket by the officer during a search incident to arrest. Law enforcement sent the granular substance to the Washington State Patrol Crime Laboratory. Two positive test results confirmed the presence of methamphetamine. Ramos claimed he did not recognize the bag of methamphetamine, a claim of dubious validity. Nevertheless, possession of a controlled substance is a strict liability crime. Ramos did not argue unwitting possession.

Second, if the reference to the DOC warrant influenced the jury, the reference would as likely have led to a conviction for assault of the law enforcement officers. For purposes of prejudice, nothing distinguished the violation of the court's order as to the impact on the respective charges.

## DNA Collection Fee

Hector Ramos challenges the sentencing court's assessment of a $100 DNA collection fee on the basis of his indigency. The DNA collection fee is no longer mandatory under 2018 legal financial obligation legislation. *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). The State admits the DOC previously collected Ramos's DNA. The State does not contest Ramos's appeal to strike the $100 DNA fee. We grant Ramos's request. Ramos need not be present in court for the court to strike the obligation.

CONCLUSION

We do not condone the prosecuting attorney's reference to the "DOC warrant," but we affirm Hector Ramos's conviction nonetheless. We remand to the trial court to strike the $100 DNA collection fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.